**NATIONAL PRESSURE COOKER CO. v. STROETER.**

**No. 4487.**

Circuit Court of Appeals, Seventh Circuit.
June 13, 1931.
Rehearing Denied July 25, 1931.

T. M. Holland, P. M. Beach, and Bundy, Beach & Holland, all of Eau Claire, Wis., for appellant.

Fred Arnold, of Eau Claire, Wis., and Harry F. Payer, of Cleveland, Ohio, for appellee.

Before EVANS and SPARKS, Circuit Judges, and WILKERSON, District Judge.

WILKERSON, District Judge.

Plaintiff (appellee here) recovered a judgment for damages resulting from the explosion of a steam pressure cooker sold by defendant (appellant here). The complaint charges that in the booklet furnished with the cooker it was represented that this kind of cookers had been tested, approved, and indorsed by efficiency experts; that the cooker was a simple household utensil, easy to use, and that any kind of cooking except broiling could be done in it; that, while the plaintiff was using it in strict conformity to the regulations prescribed for its use, it exploded; that defendant knew that the cooker was inherently dangerous and likely to result in injury to the user. The specifications of negligence are (1) constructing the cooker in such a way that, when certain vegetables were cooked therein, the petcock, safety controls, and other parts of the cooker were clogged so as to prevent the escape of steam and cause an explosion; (2) failing to examine and test the cooker before it was sold; (3) assuming to give instructions and being under obligations to give full instructions as to the use of the cooker, and then failing to give warning of the danger incident to the use of the cooker when used in the usual and customary manner; (4) representing that the cooker was a simple harmless household utensil, easy to use, thoroughly tested, and properly equipped.

The booklet sent with the cooker contained a diagram, showing the construction of the cooker and directions for its use, including the following: "Fasten the cover in position, screwing the wing nuts on the bolts, tightening them alternately around the cover so that it may be in place evenly, all around to form an air tight and steam tight joint. * * * When steam pressure begins, open the petcock to release cold air until steam begins to come out, then close it. * * * If the cover has been properly fastened, no steam will escape around the cover. * * * When the cooking period is completed there are two ways of reducing the pressure before opening the cover (a) by unscrewing the petcock, thus allowing the steam to escape; (b) by condensation, or allowing the cooker to cool slowly without opening the petcock. As the steam is released, the indicator on the dial will gradually return to zero. As soon as the steam is all out, open the petcock to overcome the vacuum, then the cooker may be opened by unscrewing the wing nuts. * * * Do not loosen the wing nuts to remove the cover until all the steam pressure has been released, as shown by the indicator on the dial pointing to zero. * * * Don't let the steam out too rapidly, otherwise the liquid contents may boil over or be drawn out of the dishes. * * * Don't unscrew the wing nuts after cooking until the indicator on the dial points to zero. * * * "

Plaintiff undertook to cook some chili sauce in the cooker. A part of the mixture was tomatoes from which the seeds had not been removed. Plaintiff testified that she

followed the directions contained in the booklet, and, after the mixture had cooked long enough, unscrewed the petcock. When the steam pressure gauge had gone down to zero, she unscrewed the wing nuts in pairs, taking the two opposite ones at a time. While she was in the act of unscrewing the last or seventh wing nut, the lid of the cooker suddenly lifted up. There was an explosion, and the scalding mixture was thrown on her.

Defendant undertook to show that the explosion could not have occurred in the manner described if plaintiff had followed the directions. Plaintiff claimed that the tomato seeds had clogged the openings and interfered with the operation of the petcock and steam gauge. Defendant, in reply to this, asserted that, in accordance with well-known laws of physics, the tomato seeds could not have reached the openings during the process of cooking under steam pressure, and that the seeds found in the openings were thrown there by the explosion, which, it could be demonstrated scientifically, must have been due to plaintiff's own negligence.

Defendant asserts that the court should have directed a verdict in its favor. Such an instruction, of course, should not have been given, if, taking the evidence most favorably to the plaintiff, there was proof to sustain any one of the specifications of negligence in the complaint. Whatever may be said about the laws of nature and the movement of the tomato seeds, one of the charges in the complaint is that defendant represented that the cooker was a simple household utensil and failed to give any adequate warning of the serious consequences which would follow a failure to comply with the directions for its use. We are satisfied from a reading of the directions that this question presented a jury issue and that there was some evidence tending to sustain plaintiff's averments.

Appellant assigns as error the striking out of the testimony of a witness (West) that, in his experience, no seeds or other particles of food had ever gone into the openings which lead to the safety valve, the pressure gauge, or the petcock; the refusal to permit the witness to testify that all other manufacturers of similar cookers equip them with a similar petcock and gauge; and the refusal to allow experiments to be made in court to show that the seeds could not get into the openings.

In our opinion the rulings of the court, as shown by the record, were correct. The testimony of the witness as to his experience with tomato seeds was too general and indefinite to be permitted to stand. What would happen under one set of conditions might not prove a safe guide as to what would happen under different conditions. The testimony as to the use of similar appliances by other manufacturers was not admissible. The judgment of others as to the safety of a given device cannot be given to the jury in this indirect way and without the opportunity for cross-examining the one who has exercised the judgment. The rulings as to the experiments in court covered a matter within the discretion of the court. In view of the difficulty, if not the impossibility, of reproducing the exact situation, it cannot be said that the trial judge abused his discretion. Other errors are assigned as to the rulings on evidence. An examination of the record satisfies us that they are either without merit or of such a character that they did not have the slightest effect upon the verdict in the case.

The judgment of the District Court should be and is affirmed.