CLARA O. SANBURN, Appellant, v. ROLLINS HOSIERY MILLS, INC., Appellee.

No. 42178.

NOVEMBER 21, 1933.

Ingham & Harrison and Ralph N. Lynch, for appellant.

Parrish, Cohen, Guthrie & Watters, for appellee.

KINDIG, J.— On the afternoon of September 3, 1931, the plaintiff-appellant, Clara O. Sanburn, out of curiosity visited the hosiery mills of the defendant-appellee, Rollins Hosiery Mills, Incorporated. While so doing the appellant came in contact with the machinery, which tore off her clothing and injured her.

So, on June 24, 1932, the appellant commenced this action at law to recover damages for the alleged injury. The appellant does not rely upon ordinary negligence as the basis for recovery; nor does she predicate her cause of action upon the ground of recklessness. It is the contention of the appellant that her injuries were caused because of the willful and wanton negligence of the appellee. Contributory negligence is not involved. That question is not argued by either the appellant or the appellee. Because, at the close of her evidence, the district court directed a verdict in the appellee's favor, the appellant appeals.

During the times material to this discussion, the appellee operated a hosiery mill at Des Moines. Apparently the mill contains many departments. One of the departments is known as the full fashion department. In this department the appellant, while watching the machinery, received the injury of which she now complains.

The entrance to the full fashion department is at the east wall near the north side of the machinery room. Contained in the room are several knitting machines. These machines are lined up on aisles running north and south. According to the record, the aisles are approximately four feet wide. At the end of the machines is a main aisle running east and west. It appears that there are two such main aisles. There are three tiers of machines. A photograph of the machines lined up along an aisle is set forth immediately below.

The machines are made up of sections. Those sections vary in number. Sometimes there are twenty, and at other times twenty-four, sections. On each side of the aisle there is a control bar which runs the length of both machines, as is indicated by the letter Y in the above photograph. Immediately below the control bar is

a shaft on which are wheels or pulleys. This is indicated in the photograph by the letter X. Apparently the control bar is three and one-half feet above the floor. When the machine is in operation, the shaft with the wheels, above mentioned, revolves. On this shaft the appellant's clothing caught, and, after thus catching, wrapped tightly around the center of the shaft. There is a very rapid movement on the shaft. The control bar extends into the aisle about eight inches farther than the shaft. During the operation of the machine the control bar does not revolve.

It somewhat indefinitely appears in the record that the knitting is done by needles placed in a wooden base called bars. These bars are about one foot long, three-eighths of an inch thick, and about one inch wide. Each bar contains 385 needles one inch in length. When the needles, called "points", are thus placed in the bar, the appearance is that of a comb. Before the knitting operation begins, employees called "toppers" walk between the machines and load them with the bars. After the knitting operation has been completed, the same employees again remove the bars. There are twelve bars used on each machine. So, the two machines when in operation use twenty-four bars. The employee who has charge of the bars sits at the end of the machine at a table. Then, when it is time to change the bars, she walks down the aisle and carries twelve of them in her arms.

As an employee of the appellee was thus carrying bars down the aisle between the two machines, a guide, the appellant, and her niece were standing in the aisle watching the machines. Thereupon the appellant says she stepped to one side for the purpose of permitting the employee with the bars to pass by. In thus stepping aside, the appellant's clothing caught on the shaft, as before indicated. Her clothing was completely torn off, and the appellant received severe injuries.

Mrs. Kathryn Blackburn, a niece of the appellant, lived in Herrington, Kansas. But on September 3, 1931, the day of the accident, the niece was visiting her aunt, the appellant, in Des Moines. On September 3, 1931, and for many years prior thereto, the appellant's daughter was an employee in the appellee's hosiery mill. It seems that the visit of the appellant and her niece at the mill was discussed with the daughter, who advised the selection of a particular guide. Certain employees of the hosiery mill acted as

guides for visitors who desired to see the mill in operation. Mrs. Palladay was the guide selected by the appellant and her niece.

The appellant is a housewife. She is sixty-one years of age and weighs 214 pounds. After procuring the guide the appellant and her niece went from department to department to see the operation of the hosiery mill. Finally they came to the full fashion department, with the machinery located along the aisles as above described. They started down the machinery aisle, where the accident occurred, with the guide first, the niece next, and the appellant following. When in the aisle, the guide first directed the attention of the appellant and her niece to the top of the machine where knitting was being done. Following that, the guide directed the attention of the appellant and her niece to the machine on the opposite side of the aisle. As the guide thus directed the appellant and her niece, the niece stepped toward the opposite machine, as did the guide, but the appellant, although she turned to face the machine, was not so near to it as she was to the one at which she had been looking. At this time a "topper" (an employee of the appellee) with the twelve needle bars came up the aisle. She passed the guide and the appellant's niece, and then approached the appellant. Just as this employee approached the appellant, the latter, according to her testimony, stepped back and her dress caught in the machine, as before indicated. While testifying the appellant said that this employee, known as the topper, rushed through the aisle with the needle bars. Again, it was said by witnesses for the appellant that the employee stepped between the visitors. It seems that the appellant did not have good eyesight and wore double lens glasses. The employee carrying the bars did not touch the appellant or come in contact with her in any way.

Because the appellee's employee moved rapidly, and because the needle bars may have had a dangerous appearance, the appellant declares that the appellee was guilty of willful and wanton negligence. Whether, in any event, the corporation would be liable for the willful and wanton acts of an employee, we do not now decide. We assume, without deciding, that the appellee is responsible for the conduct of its employee. Hence the question now to be determined is whether, under the assumption, the appellant has sustained her cause of action against the appellee. In Iowa there are no grades or degrees of negligence. Negligence in this state is such, regardless of its degree or grade. Siesseger v. Puth, 213 Iowa

164, 239 N. W. 46. The appellant does not recognize this fact in her pleadings. Assuming, however, without deciding, that the allegations of the appellant's petition are sufficient to entitle her to recover for willful and wanton conduct on the part of the appellee, it is apparent that she has not sustained her allegations. By this assumption we are not deciding that under the pleadings and arguments the appellant is entitled to this assumption. There is nothing in the record anywhere to indicate that the employee in question willfully injured the appellant. Without any doubt, the employee under consideration was merely doing her duty in the premises.

It remains to be determined, then, whether the appellant has proven wantonness on the appellee's part. If there was wantonness on the appellee's part, it must arise from the conduct of the aforesaid employee. In the record, it is conceded that the appellant was not an invitee. Her claim is that she was a licensee at the time. Being a licensee, the appellant was bound to accept the premises as she found them. Printy v. Reimbold, 200 Iowa 541, 202 N. W. 122, 205 N. W. 211, 41 A. L. R. 1423; Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 231 N. W. 665. As a licensee, the appellant found the premises with the machinery and aisle, as before described. She desired to be on, and witness, the premises with the machinery and the aisle. That was her purpose in going to the hosiery mill. Moreover, the appellant evidently did not want the employees of the mill to cease work. Had the employees ceased work, she would not have seen the mill in operation. Her desire was to see the mill in operation. In fact, she claims to have had a license so to do. A part of the operation of the mill was the placing, taking down, and replacing of the needle bars before described. When the appellee's employee came through the aisle with the needle bars, she was doing a part of the operation of the mill. There is nothing in the record to indicate that, when performing her duties, this particular employee acted wantonly.

According to the appellant's argument, wanton action is that conduct which "signifies a reckless disregard of the rights of others." See Cover et al. v. Hershey Transit Company, 290 Pa. 551, 139 A. 266, 268. Without adopting that definition of wantonness as the correct one, we will discuss the facts in this case on the basis of our own definition of recklessness and our contrast of that definition with wantonness. But, by such discussion, however, we do not wish to be misunderstood. We do not here approve or disapprove the

definition in the Pennsylvania case. In Siesseger v. Puth (213 Iowa 164, 239 N. W. 46, 54), supra, reading on page 182, we said:

"To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'willfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'willful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

So, whatever wantonness means, it is something more than recklessness under the definition of this court; because, under the definition in Siesseger v. Puth (213 Iowa 164, 239 N. W. 46), supra, there may be recklessness without willfulness or wantonness. If the appellant were relying upon the appellee's recklessness, therefore, as the basis for her cause of action, she would not have made a case. On many occasions this court has considered the conduct of a defendant when the plaintiff claimed recklessness, and found that there was no recklessness. Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; McQuillen v. Meyers, 213 Iowa 1366, 241 N. W. 442; Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159;. Levinson v. Hagerman et al., 214 Iowa 1296, 244 N. W. 307. The conduct of the defendants in the cases above set forth was more nearly reckless than the conduct of the appellee in the case at bar. Nevertheless, in each instance in the cited cases, this court held there was no recklessness. There is nothing in the record to indicate that the employee in question, when carrying the needle bars, would have run into the appellant had she not stepped backward toward the machinery. Perhaps the appellant's eyesight was defective, and perhaps she misjudged the distances, nevertheless there is nothing to indicate wantonness, or even recklessness, on the part of the appellee.

It is not necessary for us to decide whether the appellee was negligent, but we do decide that under all the circumstances the appellee was not guilty of wantonness. The district court, therefore, properly sustained the appellee's motion for a directed verdict in its favor.

Wherefore the judgment of the district court is affirmed.— Affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.