NILE ELDRED MOTTER, by HENRY MOTTER, his father and next friend, appellee, v. CHARLOTTE S. SNELL et al., appellant.

No. 49636.

(Reported in 95 N.W.2d 735 and 98 N.W.2d 746)

1248

April 8, 1959.

Opinion resubmitted on Rehearing

October 20, 1959.

Westfall, Laird & Burington, of Mason City, for appellant.

Warren L. DeVries and Mason & Stone, all of Mason City, for appellee.

Thornton, J.—This is an action commenced by the father and next friend of the minor. The minor will be referred to as plaintiff hereinafter. The accident which resulted in this litigation occurred in the back yard of defendant's home in Mason City, Iowa, Monday, June 6, 1955. Defendant, Charlotte S. Snell, is now the sole defendant in the case. The trial court sus-

tained motion to dismiss as to the other defendants. Plaintiff sustained the injury to his eye while standing on the sidewalk in the back yard of the defendant's home watching defendant's son, Lee Snell, 12 years of age at the time of the accident, mow the lawn with a rotary-type power mower.

Defendant made proper motions in the trial court and urges for reversal here three propositions: (1) insufficiency of the evidence to submit the negligence of the defendant to the jury. (2) error in the reception of evidence as to the custom and usage not cured by instructions to disregard, and (3) error in submitting impairment of earning capacity.

The first proposition requires us to examine the evidence most favorable to plaintiff to determine whether or not there is sufficient evidence to submit the case to the jury.

The jury was entitled to find the plaintiff was a boy 11 years of age and on the morning of the tragic accident standing on the sidewalk in the rear of defendant's home watching the defendant's father and then her son, Lee Snell, a boy 12 years old, operate a rotary-type power mower borrowed by defendant from her father. The rotary-type power mower was twenty-two inches wide, with a steel blade twenty-one inches long, two inches wide and 1/16 of an inch thick. The blade is enclosed in a metal frame with four wheels. On top of the frame is a 2½ horsepower gasoline motor. The blade is driven directly off of the shaft from the motor. The blade turns clockwise when you look down on it and there is an opening at the left that throws the grass out to the left of the operator and the mower. This motor has an idling speed of 500 revolutions per minute, a maximum speed of 3600 revolutions per minute and a normal operating speed of 2600 revolutions per minute. Defendant was in control and direction of her son in the mowing operation and had full knowledge of the presence of plaintiff and his position in the yard in relation to the mower. Plaintiff was a playmate of defendant's son, Lee Snell, and a frequent visitor in defendant's yard.

The attending eye, ear, nose and throat specialist that cared for the boy and removed the eye testified that plaintiff was wearing glasses (only a period of two weeks before the accident) with a case hardened lens. Such glass is less inclined to shatter. In his opinion the object that caused the injury to his eye was

propelled with great force; light force should not shatter things like that, and the object causing the injury and damage to the glasses had to be hard; that he would have no way of knowing the size of the object that cracked the eyeglasses and would not know whether it was big or small. Plaintiff testifies that he was on the sidewalk ten to twelve feet from the mower, something that looked like a shadow came from the direction of the lawn mower and hit him in the left eye, he could not say how big the shadow was or how far away when he first saw it for it was coming too fast. He did not have a chance to do anything.

Defendant made a statement to plaintiff's mother as to the mower throwing a rock but does not remember when it was made.

From the foregoing it is apparent it was a jury question as to a hard object being propelled with great force by the mower that injured plaintiff.

The only specification of negligence submitted by the able trial court is as follows:

"In operating or permitting to be operated a power mower of a rotary type under the conditions existing in said yard where the plaintiff's presence was known to said defendant."

This leaves for our consideration the condition of the yard. Was the defendant negligent in mowing the lawn under the existing condition? Was there foreseeable danger to the plaintiff?

Negligence has been defined by this court as follows:

"Negligence at common law is the doing of something which an ordinarily careful and prudent person, under the same circumstances, would not do, or the failure to do something which an ordinarily careful and prudent person, under the same circumstances, would do. The care exercised by an ordinarily careful and prudent person is in proportion to the apparent danger involved." See Buchanan v. Hurd Creamery Co., 215 Iowa 415, 420, 246 N.W. 41, 45.

"It could be only the failure of defendant to do something which, under the circumstances as they appeared to him, or should have appeared to him, as a reasonable man, he ought to have done, or the doing of something which, under such circum-

stances, a reasonable man in the exercise of proper care for plaintiff's safety ought not to have done, and which could be found by the jury to have resulted in the injury to plaintiff, that would justify a verdict against him." See Cresswell v. Wainwright, 154 Iowa 167, 176, 134 N.W. 594, 597.

The question of due care is normally a jury question. Mr. Justice Holmes states in the Common Law, page 150:

"The question what a prudent man would do under given circumstances is then equivalent to the question what are the teachings of experience as to the dangerous character of this or that conduct under these or those circumstances; and as the teachings of experience are matters of fact, it is easy to see why the jury should be consulted with regard to them. They are, however, facts of a special and peculiar function. Their only bearing is on the question, what ought to have been done or omitted under the circumstances of the case, not on what was done. Their function is to suggest a rule of conduct."

In Stafford v. Gowing, 236 Iowa 171, 178, 18 N.W.2d 156, 159, this court in distinguishing Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823, quoted the following:

"Plaintiff's evidence makes no attempt to show that the way in which the work was done was either dangerous or unusual or that the tools used were either dangerous or unusual."

In answer to the question of "existing condition" and "foreseeability" in this action the lawn must be in such condition from debris that defendant as a reasonably prudent person should have foreseen that the operation of a power mower in the lawn unnecessarily and unreasonably exposed plaintiff to injury.

The testimony most favorable to plaintiff on the condition of the lawn follows. Plaintiff's father testifies that he made observations of the yard on Tuesday or Wednesday after the accident on Monday. He says:

"I just walked through the yard, at that time I had no idea of how the accident had happened. The only thing that I had been told or knew anything about was the clothesline. Something was in the vicinity of the clothesline. I walked through the yard, the back yard, just making an over-all checkup, trying

to fix in my mind how it happened, and what was there to make it happen. At that time these bricks were still back by the garage, and they were also southwest of the house. The oak trees were as I have described them. I made observations north of the sidewalk. I walked around just kicking through the yard; seeing what was there—kicking for rocks, debris or anything that the mower could throw, and that is what I observed. There were rocks—not large rocks, perhaps in the pebble, about the size of the end of your thumb or fingers. There were little jagged chips of brick. There were small twigs that dropped off of an oak tree—not large, but those that drop off of an old oak tree."

There was further testimony about bricks being located in or close to the area being mowed and in other parts of the yard. The defendant testifies that she had her daughter pick up sticks in the yard. There was also testimony the yard was used by the children to play in and bricks were used to hold tents for the children.

There was a brick chimney removed from the house in the fall of 1953. The testimony shows the bricks were removed from the roof both by throwing to the ground and by sliding them in a trough to a truck. This took place south and west of the house. After this operation there was debris in the south lawn from the bricks and mortar. Bricks had been hauled away and bricks saved to build a fireplace.

It is only fair to say there was evidence on the part of the defendant contrary to the evidence above set out as to the condition of the lawn mowed.

From the above testimony it is apparent there was substantial testimony that the chips of brick amounted to an unusual condition in the yard from other than natural causes. The area being mowed by a rotary-type power mower was dangerous to persons near or in the area being mowed and defendant as a reasonably prudent person knew or should have known this and taken proper steps for reasonable and necessary safety of plaintiff.

The jury could properly find the area being mowed, with a rotary power mower with the blade moving 500 to 3600 r. p. m.

and containing chips of brick, was dangerous to anyone in the immediate area.

Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823, is distinguishable from the case at bar as indicated above. The work in that case was being done in the ordinary way with no unusual condition added to make the operation dangerous.

In Nelson v. Lake Mills Canning Co., 193 Iowa 1346, 188 N.W. 990, cited by defendant, a six-year-old boy crawled through an opening, sufficient in size to afford a view of the conveyor when in operation, and to permit a child to crawl or climb through, and was killed when the conveyor was put in operation. The purpose of the opening was not shown. The case differs from the case at bar in that the boy crawled into a place of danger at a time when his presence was not known nor reasonably to have been anticipated.

Defendant also cites Seibert v. Morris, 252 Wis. 460, 32 N.W.2d 239. A brief resumé of the facts of that case indicates it has no application here. The son of the defendant, a boy fourteen, was shooting arrows at a target. When smaller children came to the yard he began shooting arrows into the air. Before each shot he required the smaller children to go into a garage. One child wearing a helmet went under a table. After a number of shots, each time the small boys going into the garage or under the table, the plaintiff stuck his head out of the garage and looked. The arrow struck him a glancing blow in the eye. The plaintiff and other boys were required to seek cover to get out of danger. The plaintiff simply stepped into a position of danger after having received adequate warning.

Sanburn v. Rollins Hosiery Mills, 217 Iowa 218, 251 N.W. 144, cited by defendant, does not reach the point here urged. In that case plaintiff stepped back into a revolving machine as an employee walked by attending another machine. She alleged wilful and wanton conduct on the part of the employee. There was no evidence of wilfulness.

The Anderson v. Younker Brothers, Inc., 1958, 249 Iowa 923, 89 N.W.2d 858, and other cases of a like nature cited by defendant are cases of passive negligence. This case has the added element of the use of a rotary-type lawn mower to a

yard dangerous because of such use. This is recognized in Cropanese v. Martinez, 35 N. J. Super. 118, 122, 113 A.2d 433, 435, where plaintiff was assisting defendant, a neighbor, assemble pipe. Plaintiff could not see what defendant was doing and defendant without notice or signal suddenly turned the pipe, which slid off the wall where it was resting and injured plaintiff. In reversing a judgment of involuntary dismissal the New Jersey court quoted from Dunster v. Abbott (1953), 2 All Eng. L. R. 1573, 1574 (Ct. App. 1953), an opinion by Lord Justice Denning, as follows: " '* * * It is concerned with dangers which have been present for some time in the physical structure of the premises. It has no relevance in regard to current operations, that is, to things being done on the premises, to dangers which are brought about by the contemporaneous activities of the occupier or his servants or of anyone else. * * * In regard to current operations, the duty of the occupier—or of the person conducting the operations—is simply to use reasonable care in all the circumstances. This duty is owed alike to all persons lawfully on the premises who may be affected by his activities, and it is the same whether the person injured is an invitee or a licensee, a volunteer or a guest.' "

The trial court in instructing upon the theory of licensee to whom the defendant owed the duty of not unreasonably or unnecessarily exposing the plaintiff to danger and injury placed a greater burden on the plaintiff than is required. The instructions are not questioned and are the law of the case.

■ The next proposition urged by the defendant is based on the admissions of the testimony of five salesmen of rotary power mowers in Mason City and vicinity. The trial court allowed them to testify and in the instructions directed the jury to disregard their testimony insofar as the same related to the advice given by the manufacturers and themselves to purchasers of lawn mowers as to precautions to be observed by such purchasers in the operation of the mowers. The five salesmen testified that they instructed purchasers that the rotary-type mowers were dangerous, that the mowers should not be used if children or pets were in the yard and to keep the machine pointed away from persons in the yard; to keep the yard free of rocks, sticks, stones, and debris because they are hazardous in throwing ob-

jects, and the operator was to be sure that there was no one in the vicinity of the mower while in operation.

These salesmen did not qualify properly to testify to a general custom and usage in the community. The testimony complained of was the instructions they gave and what their various employers and the manufacturers gave for purchasers of rotary mowers.

The admissibility of this testimony and its effect on the jury even though withdrawn by the instructions are both matters within the sound discretion of the trial court. The testimony might have been very helpful to the jury under proper instructions, in determining negligent conduct—perhaps more so than the custom of persons generally using rotary-type power mowers.

In 65 C. J. S., Negligence, section 232, page 1050, we find this statement: "* * * On the other hand, even though the evidence does not show a uniform custom or usage, it may be admissible as showing the standard of care exercised by ordinarily prudent men in a similar situation, and evidence of a generally followed practice may be admissible although such practice falls short of a universal and industry-wide custom."

In Morf v. Washburn, 250 Iowa 759, 94 N.W.2d 756, this court considered and affirmed the trial court where written instructions of a manufacturer of a faucet were used as the basis for a finding of negligence and the custom of plumbers in the community disregarded.

In Wood v. Tri-States Theater Corp., 237 Iowa 799, 806, 23 N.W.2d 843, 846, this court held it was proper to consider the testimony of a salesman of twenty-years experience, and there the salesman testified " "* * * we sell them so they will lie in the direction in which the traffic flows, and usually we sell them with a piece of copper or aluminum nosing [covering] on them so there is no stepping up to clear the mat.' "

It is true in the Morf v. Washburn case, supra, no objection was made to the instructions and such instructions were in a place that the defendant could have made himself familiar with them. And in Wood v. Tri-States Theater Corp., supra, the witness had been qualified to the extent that he knew the custom in the community. Both of these cases show that evidence of what other persons, qualified by experience in the field, may

testify as to a practice used by them, not as conclusive evidence of negligence, but to assist the trier of fact in determining whether or not the defendant exercised due care.

In the case of Chicago Great Western Ry. Co. v. McDonough, 8 Cir., 161 F. 657, testimony of the practice of another railroad as to making of tests to determine the safe condition of a boiler was received. The court there said that the practice stated was some evidence of what could have been done by the defendant and so had a material bearing on reasonable care.

In Hecht Co., Inc. v. Jacobsen, 86 App. D. C. 81, 180 F.2d 13, 17, evidence of a 1941 escalator in use in a greater part of the store, an improved model, was admitted as a question of injury on a 1934 model. The court there said: "Since such evidence goes only to the question of what could reasonably have been done, there is no need to prove that a given precaution has attained the status of a custom."

In Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 840, 137 A. L. R. 598, 603, an action by a student injured while performing a chemistry experiment, evidence of a high-school teacher and a college instructor was admitted, over objections, as to the precautions they took at their schools. The court said:

"If the evidence is admitted and the jury is admonished, either at the time it is admitted or by proper instruction in connection with its admission, that it was admitted merely to show what precautions were generally taken in such cases as bearing upon the degree of care enjoined upon the defendant by his relationship to the plaintiff, we think the evidence is admissible for this purpose. [Citing case] To this extent it is not admitted for the purpose of showing a custom or to establish a rule of conduct by comparison."

The case of National Pressure Cooker Co. v. Stroeter, 7 Cir., 50 F.2d 642, cited by appellant, is in point and contrary to our holding here that evidence of this type is admissible under proper instructions.

The other cases cited by appellant do not reach the point here urged. In Gibson v. Shelby County Fair Assn., 246 Iowa 147, 65 N.W.2d 433, evidence of custom and usage was offered

and objections thereto sustained by the trial court. This court held it was error not to receive the evidence. In LaSell v. Tri-States Theatre Corp., 233 Iowa 929, 11 N.W.2d 36, appellee contended that because its lighting and construction were in accord with the customary or standard practice of theatres generally in these respects, these issues of alleged negligence were issues of law for the court rather than issues of fact for the jury. This court properly rejected such theory. In Langner v. Caviness, 238 Iowa 774, 28 N.W.2d 421, 172 A. L. R. 1135, this court held that the custom of truck drivers was admissible on the question of contributory negligence though not admissible on negligence because such custom was in conflict with a statute.

In the view we take here, that the evidence of the instructions by the salesmen might have been properly admitted in the discretion of the trial court, it follows that there could be no error not cured by the instructions to disregard such testimony. The rule in Iowa is expressed in State v. Warren, 242 Iowa 1176, 1183, 47 N.W.2d 221, 225, as follows:

"The general rule is that, if evidence erroneously admitted during the progress of a trial is distinctly withdrawn by the court, the error is cured, except in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained despite its exclusion and influenced their verdict."

On this point the defendant cites two Iowa cases, Cawley v. Peoples Gas & Electric Co., 193 Iowa 536, 187 N.W. 591, where this court affirmed on condition the plaintiff filed remittitur of the exact amount of a workmen's compensation award admitted in evidence and withdrawn by the trial court; and DeVore v. Schaffer, 245 Iowa 1017, 65 N.W.2d 553, 51 A. L. R.2d 1041, where the court held prejudicial error was not cured because the admonition of the court placed upon the jury the duty of making *a distinction in the testimony;* the admonition was not clear and understandable.

There is nothing about the testimony of the salesmen that the jury could not determine for themselves. The testimony in effect was that the rotary power mower would or could propel with great force objects of small size lying *loose* on the lawn

1258

and they warned people concerning this. After seeing the mower and how it works, this would be the natural conclusion.

■ Defendant's third complaint is that the court erred in submitting to the jury impairment of future earnings. She complains there was no competent evidence to support impairment of future earning capacity. However, an infant plaintiff who as yet has not acquired an earning capacity is not denied recovery for such damage because the proof is not as definite as required of adults. Plaintiff was eleven years old at the time of the injury, prior to that time he had had a nearsighted condition in both eyes. The condition was a little more pronounced in the right eye than the left. The condition was corrected by glasses. His left eye was removed as a result of this injury. The doctor testifies plaintiff would be limited from training schools in military life and that he could not see as well with one eye as he could with two. The fact that plaintiff was limited from military training schools would be some evidence of loss of earning capacity when he reached that age.

The rule on the right of an infant plaintiff to recover for impairment of future earning capacity is, where there is a permanent injury and the trial court is of the view that reasonable men could find that probably there will be some resultant impairment of future earning capacity, then even in the absence of definite proof as to the extent of such loss the issue is for the jury. The jury are allowed to rely upon common experience and the circumstances of the case. The verdict is naturally subject to the control of the court on a motion for a new trial or on appeal. See Simmel v. New Jersey Coop Co., 28 N. J. 1, 143 A.2d 521; 25 C. J. S., Damages, section 40, page 514.

This rule is also expressed in O'Hanlon v. Pittsburgh Rys. Co., 256 Pa. 394, 396, 100 A. 972, 973, wherein a seven-year-old plaintiff lost a leg, as follows: "Plaintiff being so immature when injured as to be without earning capacity did not deprive him of the right to recover for such loss of earnings as the jury found from all the facts and circumstances he would, after reaching his majority, sustain as a result of the accident [citing cases]."; and in Houston Transportation Co. v. Grimm, Tex. Civ. App., 168 S.W.2d 892, 896, wherein a three-month-old child lost an eye, as follows: "Self-evidently, it would seem, the

total loss by the child at such an early age (three months) of one of its eyes, was alone sufficient to support a finding of permanent diminishing of earning capacity."

Defendant does not question the size of the verdict in this case, and the verdict of $5500 does not indicate any undue allowance for impairment of future earning capacity.

The judgment is affirmed.

OLIVER, GARFIELD and GARRETT, JJ., concur.

BLISS, J., takes no part.

There being an even division of opinion among the members of the court taking part, as to affirmance or reversal of this case, the judgment of the lower court is affirmed by operation of law. —Affirmed by operation of law.

LARSON, J. (dissenting)—I find myself unable to agree with the majority and must respectfully dissent. This action for damages, brought by the father of the injured minor against the defendant, Charlotte S. Snell, resulted from an eye injury while the minor, hereinafter referred to as the plaintiff, was watching defendant's son, Lee Eric Snell, age 12, mow the north half of their lawn with a rotary-type mower.

The principal issue was as to the sufficiency of the evidence on defendant's negligence and proximate cause to permit submission of that issue to the jury. It is upon defendant's specification of error by the trial court in failing to direct a verdict for her upon that issue that I address this dissent.

There was no evidence that the rotary mower was defective or improperly operated at the time of plaintiff's injury. There was no evidence that such a machine is a dangerous instrumentality requiring more than ordinary care in its operation.

This, then, resolves the issues to questions of whether the involved area was shown to be in such bad condition that there was great danger to anyone near by when it was being mowed with a rotary mower, and whether this condition was known to defendant or should have been known to her at that time. Was there any substantial evidence of neglect in the care of the lawn? I think not.

Plaintiff's specification of negligence was that a power mower of a rotary type was operated in the yard "under the conditions then and there existing in said yard", and that it was negligently operated "under the conditions existing in said yard when the plaintiff's presence was known * * *"; also that the yard "was and for a long time had been in a dangerous condition in that rocks from gravel driveway * * *, bricks and debris from a demolished chimney * * *, as well as sticks, twigs and general debris had been allowed to accumulate in the grass growing on said yard."

It may be conceded that, had adequate proof of these allegations been offered, the question of defendant's negligence would have been properly submitted to the jury.

But there was little or no proof of these conditions. Certainly the well-known rule that for the purpose of the ruling on defendant's motion the evidence must be viewed in a light most favorable to plaintiff cannot convert a mere inference or a scintilla of evidence of a violated duty owed plaintiff by this defendant to the status of factual proof.

Since the real question involves a close scrutiny of the testimony, let us see what evidence there was of the alleged neglected and badly kept yard. Four trees were shown to be in that area, but the only testimony as to them was that they were oak trees, that small twigs and acorns were always being cleaned up by members of defendant's family, and that they were not allowed to accumulate. No one contradicted that testimony.

There was testimony that two years prior a chimney had been removed on the side of the house opposite the area being mowed and that some used bricks were piled against the house some 25 feet from the area involved. No one said that litter had not been cleaned up and removed.

There was testimony that a near-by driveway had pebble-sized rocks as a base laid with a binder, but the mower was not close to the drive when this accident occurred.

It is true the plaintiff's father testified that he made a careful inspection of the area a day or two after the accident and discovered some small rocks of pebble size and some chips of bricks in the grass near the spot where the mower was when

his son was injured. However, even he did not testify that defendant's yard was in an untidy, dangerous or a cluttered condition.

In fact, a neighbor said this lawn was just normal, not fancy, but a yard with a fair stand of bluegrass where the children often played. Certainly there was no evidence which would permit a conclusion that this area was not an ordinary average lawn, much less that it was an untidy hazardous yard wherein a reasonably prudent person would not venture with a rotary-type mower. In addition, there is absolutely no evidence that defendant was aware of any hidden pebbles or brick chips in the grass or should have been aware of them.

I. Negligence is predicated upon an unperformed duty, and the possessor of real estate is not an insurer of the safety of all those who come upon his premises by invitation, express or implied. Atherton v. Hoenig's Grocery, 249 Iowa 50, 56, 86 N.W.2d 252, 255; Schafer v. Hotel Martin Co., 249 Iowa 866, 89 N.W.2d 373; Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858. In the Atherton case we quoted, with approval, the rule announced by the Supreme Court of Virginia in Trimyer v. Norfolk Tallow Co., 192 Va. 776, 781, 66 S.E.2d 441, 444. It said: " 'To sustain a charge of negligence the unsafe condition relied on must be one of which the owner knew or should have known, and the invitee did not know and could not reasonably have discovered.' "

If, as I comprehend the majority opinion, the defendant has the duty to minutely inspect and remove all foreign objects from the area she intends to mow before it may be undertaken when anyone is near by, then we are establishing a duty which is impossible to perform. We then are announcing the rule that when anyone is injured in the vicinity of a rotary mower being operated on one's premises, the question as to whether or not one properly performed his duty to inspect and remove all small obstacles from the area is purely a jury question. This, to me, is a new and fantastic venture into the field of tort law, and obviously makes a real-estate owner an insurer of all those near by when he uses a rotary mower to mow his lawn.

II. We have considered cases of a similar nature in the past and have never announced such a liberal view. While not

exactly the same, we held in Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823, that no defendant duty was breached when a minute particle of metal chipped off a hammer being used on a tire repair job by the service station operator struck the plaintiff in the eye. We held there was no positive evidence as to the origin of the object, and no evidence that the operation and methods used by the station operator were not those ordinarily used. Thus, the failure to show a departure from the ordinary precautions was the ground for sustaining the motion for a directed verdict. The same rule should be followed herein.

Here the plaintiff was standing some eight to ten yards from the mower when struck by something that looked like a black shadow which came fast from the direction of the mower. The object was never found. Whatever it was, it shattered the lens in plaintiff's glasses and resulted in the loss of the lad's eye. It is a regrettable accident, but there is nothing more than an inference that it was caused by the mower. The possibility that the object was a shot from an air gun or a slingshot was not excluded. Indeed, many things besides the mower could have propelled the destructive object.

It is my feeling that plaintiff has failed to carry his burden either to show a violated duty by defendant or that the operation of the mower in that area was the proximate cause of his injury. It is pure speculation, first, that the yard was not properly cleaned, and second, that the mower struck an object and propelled it toward the plaintiff, and that any amount of diligence could have avoided this mishap. Much more should appear to fix liability on the defendant herein.

Besides the plaintiff and the lad operating the mower, the defendant and her father were in the yard. None heard any object strike the casing of the mower, a usual warning of foreign objects in the grass. None was heard by the father when he operated the mower on three rounds before turning the machine over to the boy. How, then, can we say that defendant should have been aware of the danger so as to owe a duty to warn invitees or anyone in the vicinity of hidden danger or hazards?

In addition, up to this time that lawn had been mowed with a hand mower or a reel-type power mower, and they "never had any trouble with using either of these mowers on that

lawn." Obviously it takes little in the way of debris to stop such mowers or alert the operator to the presence of foreign objects.

In Shreve v. Edmundson Art Foundation, Inc., 243 Iowa 237, 246, 50 N.W.2d 26, 30, we said: " 'Negligence is not proved by such an isolated occurrence. It must be predicated on what should have been anticipated, and not merely on what happened.' " The true rule approved therein, which I hope still exists, is that the ground of liability is the proprietor's superior knowledge of the perilous instrumentality and danger therefrom to persons going on the property. Clearly, no proof appears herein to establish that knowledge in the defendant. In fact, all the proof is to the contrary. Unless one charges the owner with knowledge of marbles, pebbles, etc., which children often drop in the grass, there is nothing to sustain an unusual condition before us.

Possibly this dissent will be a loss of effort, as most dissents are, but if it serves as a warning that blame must not always follow an unfortunate accident, the effort will not be in vain. I think defendant's motion to direct should have been sustained. I would reverse.

THOMPSON, C. J., and HAYS and PETERSON, JJ., join in the dissent.

OCTOBER 20, 1959.

A rehearing having been granted in the foregoing cause, in which the original opinion and dissenting opinion appear in 95 N.W.2d 735, and it having been resubmitted, JUSTICES THORNTON, GARFIELD, OLIVER and THOMPSON voted for affirmance. The CHIEF JUSTICE and JUSTICES HAYS, PETERSON and GARRETT voted for reversal. JUSTICE BLISS took no part.

The court being evenly divided, the case is—Affirmed by Operation of Law.