Roberta ABRAHAM,
Plaintiff-Appellant-Respondent,

v.

Ernie JOHNSON and Wayhaven, Inc., a corporation,
Defendants-Appellants-Respondents.

Nos. 10301, 10302.

Missouri Court of Appeals,
Southern District.

March 7, 1979.

Motion for Rehearing or to Transfer
Denied March 30, 1979.

Application to Transfer Denied
May 17, 1979.

William H. McDonald, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for plaintiff-appellant-respondent.

E. C. Curtis, Lincoln J. Knauer, Jr., Farrington, Curtis, Knauer & Hart, Springfield, for defendants-appellants-respondents.

FLANIGAN, Chief Judge.

Plaintiff Roberta Abraham brought this action for injuries she sustained when her face and arm were struck by a television tray which had been thrown through the air by a mowing machine operated by defendant Ernie Johnson. The parties stipulated that Johnson, at the time of the occurrence, was acting in the course of his employment for defendant Wayhaven, Inc. Plaintiff received a jury verdict in the amount of $4,500 and judgment was entered thereon. Each side has appealed.

On their appeal defendants make two contentions. The first is that plaintiff failed to make a submissible case in that there was no showing of negligence on the part of defendant Johnson in the operation of the mower and that the trial court erred in denying, at the close of all the evidence, defendants' motion for directed verdict. Defendants' second contention is that plaintiff's verdict-directing instruction was erroneous. On her appeal plaintiff contends that the trial court erred in giving a withdrawal instruction concerning her damages.

██ In considering defendants' first contention this court must give plaintiff the benefit of all favorable evidence and every reasonable inference to be drawn therefrom. Defendants' evidence is to be disregarded unless it aids the plaintiff's case. *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327, 329[2] (Mo.App.1977). A cause may not be withdrawn from the jury unless the facts in evidence and the reasonable inferences derivable therefrom "are so strongly against the plaintiff as to leave no room for reasonable minds to differ." *Hastings v. Coppage*, 411 S.W.2d 232, 235[2] (Mo.1967).

██ The land on which the events took place was owned by defendant Wayhaven. Twelve days before the accident plaintiff had moved into a house located on defendant's premises pursuant to an arrangement whereby she would "fix it up" in return for one month's free rent and commence paying rent thereafter.

The incident occurred around 1 p.m. on June 27, 1974. Present at the scene were plaintiff, defendant Johnson and Donald Allcorn. At the time she was struck by the television tray plaintiff was standing on the front porch of the house which faced east. She was talking with Allcorn who was standing about eight feet from her. Prior to the accident Allcorn had mowed a portion of the yard. The machine which Allcorn used was a "little" power mower.

North of the house was a "weed patch" about 12 feet wide, from north to south,

and 15 feet long, from east to west. The weeds were approximately four feet high, too high for Allcorn's mower.

The mowing machine, or brush hog, operated by Johnson was "a rotary blade type, two blades, one on each side." The brush hog was pulled by a tractor and its swath was approximately seven feet wide. The tractor was not "enclosed." Johnson, as the operator, "sat up high above the tractor so that I can see over the front of the hood. I can see the area the mower will be going over." Johnson had operated the brush hog, or at least one of its type, for five years. Earlier in the day Johnson had been mowing a field east of the house but interrupted his work there for the purpose of mowing the weed patch and also some vines which were next to the north side of the house.

Johnson testified that he knew that the brush hog "will pick up pop cans and throw them out the back end." A space approximately two and one-half feet wide at the rear of the brush hog was unguarded. Long before the accident Johnson "had put chains over the front end" of the brush hog "because sometimes when I was mowing I would hit a rock and it would bounce up and hit the front tire and come right back on me." Additionally, at Johnson's request, his employer made a screen "to protect my back, to keep the mower from throwing things at the operator." Johnson also testified that as he mowed, objects would hit the chains. Before mowing the weed patch Johnson had waved Allcorn and one of plaintiff's children "clear out of the road because I didn't want anybody close to the brush hog when I was brush hogging. I don't like to be brush hogging when people are around."

One of defendants' witnesses testified that "the brush hog is dangerous" and that "it is dangerous to operate brush hogs in the immediate vicinity of people . . . Operating a brush hog you look ahead to try to avoid stumps and rocks."

During the course of his mowing on the north side of the house Johnson made several "circles" with the tractor-mower unit. It is a clear inference that the unit was highly maneuverable. Asked by plaintiff's counsel if he could see an object if he "might be going to hit it with the mower," Johnson, referring to "something like that or a rock," replied, "I can dodge."

Having completed the mowing of the weed patch and the vines, Johnson drove the tractor mower unit eastwardly with the intention of resuming his work in the east field. He did not "disengage" the power to the brush hog, and the blades of the latter continued to move. When the brush hog reached a point north of the porch, and approximately 40 feet from where plaintiff was standing, its moving blade or blades struck the television tray, cutting it in two and hurling both pieces through the air toward the plaintiff. The two pieces, both of which struck the plaintiff, were introduced in evidence in the trial court and are exhibits here. Each piece is grossly contorted, giving mute but cogent evidence of the violence of the force which projected it. Before its severance the television tray appears to have been approximately 14 inches long and 18 inches wide.

Johnson said he did not see the television tray before "I hit it." Allcorn, who had seen the tray before the accident, testified that it "was lying out in the open" and "was in plain sight." The tray was not covered by the newly mowed weeds. Allcorn said that the weed patch had "trash and stuff in it" and that the tray was lying at or near the edge of the weed patch Johnson had mowed.

On cross-examination by defendants' counsel plaintiff testified to some familiarity with the characteristics of brush hogs. She said that if she had known the tray was there, she would have picked it up because she realized that if a brush hog ran over the tray it might "very well pick it up and throw it with force."

In fine the evidence justified the triers of the facts in finding that Johnson was aware of the dangerous character of the brush hog and its proclivity to throw objects; that he failed to see the television tray in the path of the tractor although the tray was in

plain sight; that he had the means to avoid hitting the tray and would have done so if he had seen it. Johnson admitted that he knew two or three people were on or near the porch as he proceeded eastwardly and "shortly before" he struck the tray.

The plaintiff did not know that the tray was in the yard. Defendants do not claim that she was guilty of contributory negligence as a matter of law. The trial court, at defendants' request, did give an instruction on contributory negligence but the jury resolved that issue, if such it was, in favor of the plaintiff.

Neither side has cited any Missouri case which is factually similar. Cases from other jurisdictions support the view that where the operator of a power mower has knowledge, actual or constructive, that under certain circumstances objects capable of inflicting injury may be thrown by the mower, he may be found negligent in his manner of operation of the mower and liable for the resultant damages. Although all of the authorities recognize that basic principle, varying factual situations have produced holdings that the evidence was sufficient, *Glenn v. City of Raleigh*, 246 N.C. 469, 98 S.E.2d 913 (1957); *Motter v. Snell*, 250 Iowa 1247, 95 N.W.2d 735, 98 N.W.2d 746 (1959); *Loonan Lumber Co. v. Wannamaker*, 81 S.D. 51, 131 N.W.2d 78 (1964); *Beaver v. Costin*, 352 Mass. 624, 227 N.E.2d 344 (1967), or insufficient, *Stayton v. Funkhouser*, 148 Ind.App. 75, 263 N.E.2d 764 (1970); *Embry v. Henderson*, 511 S.W.2d 218 (Ky.App. 1974), to support findings of actionable negligence on the part of the mowing machine operator. See Anno. 25 A.L.R.3d 1314, 1316.

In *Glenn* plaintiff was injured by a rock, three inches in diameter, which was thrown 60 feet by the mower. The defendant was mowing in a "very rocky area." In *Motter* an evenly divided court affirmed the judgment for the plaintiff. The evidence did not identify the object which struck the plaintiff, but defendant's yard had an unusual amount of brick chips in it. In *Loonan* the object thrown was a rock approximately the size of a silver dollar and the defendant was mowing in a ditch which he knew contained loose rock. In *Beaver* the mowing machine threw several rocks approximately six feet toward a highway and one of the rocks struck the plaintiff who was a passenger in an automobile.

In *Stayton* an unidentified object struck the plaintiff who was approximately 50 feet from the mowing machine. The lawn being mowed contained "the normal amount of stones and twigs." The court stated that there was no duty on the part of the mower operator "to minutely inspect his yard" before mowing. The court pointed out that plaintiff's evidence failed to show that the condition of the defendant's lawn was "abnormal, i. e., was in an unusual condition due to other than natural causes." The court also said, at 770: "However, we do not hold that an injured party may never recover from the owner or operator of a rotary mower that has propelled a foreign object and injured him."

In *Embry* the plaintiff was struck by a screw driver, of unstated size, which was thrown approximately eight feet by the mowing machine. There was no evidence that the screw driver was visible prior to its being thrown by the mower. The court said the facts were "substantially identical" to those in the *Stayton* case.

Neither in *Stayton* nor in *Embry* was the court confronted with a situation where the mowing machine encountered an object as large and plainly visible as the television tray. It could have been observed, so the jury could have found, by an operator exercising ordinary care. Discovery of its presence did not require a "minute inspection." The size of the tray, its visibility, the maneuverability of the mower unit, the availability of space to maneuver, together with the other circumstances previously set forth, demonstrate that the issue of defendant Johnson's negligence in the manner of operation of the mower was clearly one for the jury. It must be kept in mind that the tray was not in motion. Defendants' reliance upon automobile cases involving the opportunity of one driver of a moving vehicle to avoid colliding with another moving vehicle is ill reposed. Defendants' first contention has no merit.

■ Defendants' second contention makes a two pronged attack upon instruction number 2, plaintiff's verdict-director. The first prong is that there was no evidence to support the giving of the instruction. Defendants' argument is an echo of its first contention. The first prong has no merit.

Defendants' second prong of its second contention is directed to the form of instruction number 2. Defendants do not attack the phraseology of the findings which the instruction did require. Defendants' complaint is that the instruction was erroneous in failing to require certain additional findings.

It is arguable that the omitted matters need not have been included for the reason that they were "detailed evidentiary facts" as distinguished from "ultimate issues." The mandate of MAI, page L, is that an instruction must submit the latter and not the former. However, the omitted matters need not be particularized nor discussed at length for the reason that defendants' own evidence showed their existence.

"It is not error for an instruction, before or after MAI, to assume 'an uncontroverted fact' established by the testimony of the adversary." *Gathright v. Pendegraft,* 433 S.W.2d 299, 314[26] (Mo.1968). Whether or not instruction number 2 was technically imperfect, this court, confining its review to the errors alleged, finds no prejudicial error in it. Both prongs of defendants' second contention are unsound. Defendants' appeal has no merit.

On her appeal plaintiff makes the single contention that the trial court erred in giving, at the request of defendants, instruction number 9, which reads:

"Instruction No. 9

■ The evidence of plaintiff's loss of wages after she was physically able to return to work is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

Plaintiff argues that the giving of instruction number 9 was erroneous "for the reason that wages or income lost by plaintiff, after she became physically able to work, *due to her inability to find employment* was a foreseeable consequence and was the direct and proximate result of defendants' negligence."

Authority exists to the effect that the right to recover for a temporary impairment of earning capacity ceases when a complete cure is effected. *Augustus v. Goodrum,* 6 S.W.2d 703, 704[3] (Ky.App. 1928). "There can be no recovery for mere inability to find work after the injury, as distinguished from an inability occasioned by plaintiff's incapacitation from labor because of the injury." 25 C.J.S. Damages § 40, p. 727.

Defendants argue that they should not be penalized because of plaintiff's inability to find a job due to economic conditions or other factors beyond their control. The soundness of that argument, however, need not be adjudicated for the reason the evidence which the jury, by instruction number 9, was instructed to disregard was so flimsy and insubstantial that it would not have aided plaintiff if the jury had been permitted to consider it.

The record shows that plaintiff was physically able to resume her employment on October 1, 1974, but did not in fact obtain employment until June 1, 1975. The record, however, does not contain substantial evidence to the effect that employment was unavailable between those dates. She did testify that she applied for a job "at 12 or 15 places." She did not state what information or reaction was elicited by those applications. She did not give the date or dates when the applications were made nor did she state when any of them was made with respect to the date she achieved her physical recovery. She did not testify that jobs were in fact unavailable at those places or elsewhere.

Apparently recognizing the weakness of her testimony, plaintiff in her brief says that she "offered to prove that she was unable to find employment until June 1, 1975." This court has examined the alleged "offer of proof." Plaintiff, on direct exam-

ination, was asked if she had made application "at any concerns or places for jobs." She answered in the affirmative. Plaintiff's counsel then asked plaintiff, "how many places?" Defendants' counsel interposed an objection. A colloquy ensued between the court and both attorneys. During that colloquy the court inquired of plaintiff's counsel, "what is your theory here?" and counsel responded, "I want to show that she was unable to get any employment." The court *overruled* defendants' objection and plaintiff proceeded to give the testimony previously outlined. Plaintiff does not claim error on the part of the trial court in rejecting any specific offer of proof. Her complaint is limited to the giving of instruction number 9.

It is unnecessary to consider whether instruction number 9 was a correct statement of the law for the reason that the evidence which it withdrew from the jury's consideration was so lacking in substance that no prejudicial error arose. Plaintiff's appeal has no merit.

The judgment is affirmed.

HOGAN, TITUS, BILLINGS and MAUS, JJ., concur.