BEATTY, Justice.
Appeal by the plaintiffs from a directed verdict in favor of the defendants. We affirm.
This case arose from an eye injury sustained by Deborah Kay Cochran, a minor who was eleven years of age at the time. She was struck in her right eye by a foreign object while her friend, Sheila Groves, also a minor, was operating a power lawnmower. Deborah had accompanied Sheila to the *1101 latter’s home after school, and they had planned to spend the night at Deborah’s home. Sheila’s stepfather instructed her to mow their lawn before leaving. This was a household chore which Sheila had been regularly performing since she was nine years old. Her routine, followed on this occasion, was to pick up any debris or other objects before cutting the grass. Sheila’s stepfather, Marcio David, was an invalid. He supervised Sheila’s mowing from his wheelchair inside their home by viewing it from windows, and occasionally gave verbal instructions.
In this instance Sheila walked over the front and side yards, clearing them of debris, and then mowed them. Sheila’s stepfather at one point instructed Deborah, who was in the proximity of the operation, to “get away from the lawnmower.’.’ After these yards had been mowed Sheila cleaned the backyard where the mower was being operated when the accident occurred. This portion had been mowed the week before and the grass was three to five inches high. Objects of glass, wood and paper were picked up and thrown out, leaving grass and patches of bare spots. The mower was set on its highest cutting setting, cutting about one inch of the grass, and at medium speed. Deborah stood at the corner of the house about twenty-five to thirty feet from the point where Sheila was cutting, the discharge chute of the mower being away from Deborah. Some object struck Deborah in her eye. It was assumed to have come from under the mower; however no one identified it or knew what it was. Deborah suffered a corneal laceration, underwent two surgical procedures, and was hospitalized for two days.
Initially this action was brought by Deborah’s mother, for herself and as next friend, against Sheila, her stepfather, her mother and two corporate defendants. The latter two defendants were removed and the case, based on negligence, proceeded with the remaining parties. At the conclusion of the plaintiffs’ case Sheila’s mother was dismissed as a defendant, and the trial court granted the defendants’ motion for a directed verdict against the plaintiffs.
Both sides concede that Deborah Cochran was the social guest of the defendants and it is the plaintiffs’ contention that at the time of the accident Deborah was in a position of peril because the lawnmower was a “dangerous instrumentality.”
We have not found any decision in this or any other jurisdiction so holding. But in any case under the dangerous instrumentality doctrine the issue would be whether or not the defendants knew or had reason to know of a condition involving an unreasonable risk of death or serious bodily harm to the plaintiff child that would result from the operation of the lawnmower under the circumstances established. Cf. Weatherby v. Meredith, Ala., 341 So.2d 139 (1976); see also Tolbert v. Gulsby, Ala., 333 So.2d 129 (1976) for a description of dangerous instrumentality liability and this Court’s adoption of § 339 of the Restatement (Second) of Torts (1965). A case in point, Motter v. Snell, 250 Iowa 1247, 95 N.W.2d 735, 98 N.W.2d 746; 25 A.L.R.3d 1314, 1318 (1959), did not find that a dangerous instrumentality existed. In that case the plaintiff sustained an eye injury in the defendant’s backyard while he was watching the defendant’s twelve-year-old son operate a power mower which was ten or twelve feet away. That court identified the two material issues to be (1) whether the defendant was negligent in mowing the lawn under the existing condition and (2) whether there was foreseeable danger to the plaintiff. In response to these issues the Court stated that the lawn “must have been in such condition from debris that the defendant as a reasonably prudent person should have foreseen that the operation of a power mower in the lawn would unnecessarily and unreasonably expose plaintiff to injury.” 25 A.L.R.3d at 1318. Four members of the Court voted to affirm the verdict for the plaintiff because an unusual condition existed in the yard due to an accumulation of brick chips left there after the removal of a brick chimney. Four justices dissented because (1) no violated duty was shown and (2) no proximate cause was shown inasmuch as it was speculation that the yard was not *1102 properly cleaned and that the mower struck and propelled an object toward the plaintiff. The evenly divided vote of the Court became an affirmance under their local rules.
Other “lawnmower” cases are to the same effect. In Stayton v. Funkhouser, 148 Ind.App. 75, 263 N.E.2d 764 (1970) it was held that the owner or operator of a mower is under no legal duty without evidence that the mower was throwing foreign objects, or that the area being mowed was contaminated by unnatural causes, or was of a dangerous or unusual character due to natural causes. The normal operation of the lawnmower, moreover, was found not to be “inherently dangerous.” In Embry v. Henderson, Ky., 511 S.W.2d 218 (1974), the plaintiff was injured by a screwdriver thrown from a rotary lawnmower operated by a minor who was employed by the tenant to cut the grass. The minor had made an inspection of the yard before mowing it and had picked up any visible paper or debris. There was no evidence that the screwdriver came from the yard or that anyone had knowledge that it was in the grass or the yard previously. After the trial and a jury verdict for the plaintiff, the trial court granted the defendants’ motion for judgment n. o. v. and entered a judgment for the defendants on the ground that the plaintiff had failed to show any actual negligence by the defendants. That action was affirmed on appeal with this language:
In the instant case, any inference of negligence was rebutted by evidence of an ordinary inspection of the yard prior to mowing which is all that is required of an ordinary prudent person, particularly where there is no evidence of rocks, debris or other unusual condition of the lawn that would make it dangerous. [511 S.W.2d 220.]
As applied to injured minors who are licensees these “lawnmower cases” do no more than apply § 339(b) and (e) of the Restatement (Second) of Torts (1965), adopted in Tolbert v. Gulsby, supra and which states:
A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
♦ ♦ * * * *
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
The evidence in this case affirmatively discloses an inspection of the yard which failed to reveal any unusual condition which would give the yard a dangerous character when mowed and thus create a peril for the plaintiff. Sheila testified that she picked up everything she saw, rocks, gravel, sticks, twigs, and similar things. There had not been any other occasions when the lawnmower had picked anything up and thrown it against the house or tree. She spent about ten minutes cleaning up the lawn before she proceeded to cut it.
Sheila’s stepfather testified to his safety instructions to her, and to his lack of knowledge of any foreign objects having been thrown up from the lawn. He himself cautioned Deborah to get away from the mower while Sheila was operating it “before something hits you.” There were rocks in the front yard caused by cars using the road but no rocks in the backyard (where the injury occurred).
The tendencies of the evidence fall short of raising a reasonable inference of the defendants’ liability here; the jury, as reasonable persons, would have had nothing on which to disagree. Under these circumstances the trial court’s direction of a verdict for the defendants was proper. His judgment for the defendants, therefore, must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.