Richard J. CATALANO, a minor, by his father and next friend, Pete J. Catalano, Plaintiff-Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Defendant-Appellant.

No. 25473.

Kansas City Court of Appeals, Missouri.

Dec. 6, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 6, 1972.

Application to Transfer Denied Feb. 22, 1972.

Aaron A. Wilson, City Counselor, Charles A. Lewis, Associate City Counselor, Thomas C. Clark, Asst. City Counselor, Kansas City, for defendant-appellant.

Austin B. Speers, Kansas City, for plaintiff-respondent.

DIXON, Commissioner.

On June 16, 1966, the plaintiff, Richard J. Catalano, then 10 years old, who had gone to Sunnyside Park to swim, stepped on a piece of broken beer bottle and severely cut his foot. He did not cut his foot in the pool itself, but during a rest period had gone to an adjacent playground area where he received the cut when he stepped off of the hard surface under the swings in roughhousing with another boy. He had a judgment for $3,250 as damages, and the City has appealed claiming the trial court erred in refusing to direct a verdict because the issues of "notice" and "due care" were not submissible. No issue is raised as to the amount of the verdict nor of the instructions in the case. It is conceded that the defendant City operated

this park in a proprietary capacity and that it is required to exercise ordinary care to maintain such park in a reasonably safe condition.

The posture of the case requires that we accept as true the testimony favorable to the verdict. We consider the evidence in the light most favorable to the verdict. All legitimate inferences that may be drawn therefrom in support of the verdict are likewise considered. Nor will we convict the trial court of error in refusing to direct a verdict unless all reasonable men in the exercise of fair and impartial judgment would reach the same result. Gudorp v. City of St. Louis, Mo.App., 372 S.W.2d 483, 484.

For brevity, we summarize only the evidence relating to the issues of submissibility.

Sunnyside Park, where the plaintiff was injured, is shown to contain a small playground area containing swings and other playground equipment. The swings (and particularly the one near which the plaintiff was injured) have a hard surface under them, either asphalt or concrete. On the morning of June 16, 1966, a young man was present in the park at the exact location where the plaintiff was injured. Called as a witness by plaintiff, he testified that there was a Park Department Supervisor there in the mornings who picked up trash with the assistance of some of the children. He also stated quite a few "parties" had occurred in the park during the evenings immediately prior to this date. He said there was considerable debris scattered around in the park. In response to direct questioning, this witness testified there was glass in the grassy area of the park near the swing; and when asked to describe the glass he could see in the area around the swing, he stated, "Most of the glass was beer bottles, and they were broken, and there was quite a few pieces partly imbedded in the ground." He asserted on cross examination that there was dirt and grass on the pieces of glass. This witness apparently remained at the park until the time of the injury to the plaintiff and was approximately 20 feet from the plaintiff when the injury tto the plaintiff occurred. When questioned concerning the location of the plaintiff when injured, he testified as follows: ". . . there is a grassy area around the swings and asphalt under the swings. There is grass, you know, right around the asphalt. As far as I can remember, he was on the grassy area almost off the asphalt." He further stated that the grass was not excessively long in the area where the plaintiff was injured. Another witness testified that the condition of glass in the park was quite widespread during the months of May and June of 1966. The plaintiff and plaintiff's father testified that the piece of glass upon which the plaintiff cut his foot was a broken beer bottle, "a dirty beer bottle with mud around the middle of the sides and the mud in the center went under the bottle." The piece of broken beer bottle was about six inches long and two to three inches around, "curved like," that it was a "bottle broken in half lengthwise." The time of the incident was between 2:30 and 3:00 in the afternoon, and thus, the condition of broken beer bottles on the ground had existed several hours. The plaintiff also introduced evidence concerning rainfall which indicated no rain had fallen for approximately 22 hours. The City's responses to interrogatories which were introduced in evidence showed that on the day in question, twelve employees of the City had been present at some time during the day on June 16, 1966. The occupations of the employees present included two foremen, three trash collectors, five lifeguards, and one supervisor of recreation.

The City offered evidence to the effect that there was a daily pickup of trash and daily inspection by a supervisor or assistant, that they urged children to use the park areas and that they wanted to make the parkgrounds particularly safe because they were put there for the children's use.

The trash crews were charged with the responsibility of picking up debris, and they concentrated on the playground areas. Most of the debris and broken bottles would be found in the playground areas, and there was usually glass in all of the parks. A lifeguard present on the day of the occasion was aware of a general condition of broken glass sometimes even in the pool. He inspected the area around the pool very carefully to protect the children "from the glass we knew was bound to be in the area."

Upon this evidence, the City vigorously asserts that the plaintiff has failed to prove notice, actual or constructive, of the broken beer bottle which injured plaintiff. In the interest of simplicity, it may be conceded that there was no actual notice to any particular employee of the City that this particular piece of glass was in Sunnyside Park on the day in question. Nor is it entirely clear that the testimony of the City's employees can be taken to be evidence of the actual knowledge of a general condition of broken glass in the park area, although if that were all the evidence in the case, there might be a legitimate inference that the City's knowledge of the continuing condition of broken glass was sufficient to constitute constructive notice. Sutter v. Kansas City, 138 Mo.App. 105, 119 S.W. 1084.

In view of all the evidence presented by the plaintiff, we do not consider it necessary to place the resolution of this problem upon an issue of actual notice. The record plainly demonstrates that there was a condition of broken beer bottles in the morning when the City was making its routine inspections of the park. Such evidence supports an inference of notice to the City of this "condition."

The City's contention with respect to the issue of notice is that there was no evidence, actual or constructive, of the presence of "the broken bottle," that the evidence of the rainfall the previous day, coupled with evidence of rainspots and mud on the bottle, does not prove its presence in the area for any period of time.

■ The City continues its argument by asserting that only by "speculation and conjecture" could the jury "deduce just when *the bottle* was so positioned." If the plaintiff's burden was to show when "the bottle" was deposited in the grass, the City's contention might be sound. Neither logic nor law require that such a burden be shouldered by the plaintiff. It is clear that when the risk arises from a condition as opposed to a specific defect, there is no requirement of notice as to the component parts of the condition. Moses v. Kansas City Public Service Co., 239 Mo.App. 361, 188 S.W.2d 538, 545.

■ In Fadem v. City of St. Louis, Mo.App., 99 S.W.2d 511, the precise issue raised by the City in this case was considered by the court. There the plaintiff fell at 1:00 in the afternoon on some wet lettuce leaves. The evidence showed that at 11:30 in the morning there was a considerable quantity of lettuce leaves on the sidewalk where she fell. The City contended that there was no proof that the condition of lettuce leaves upon which the plaintiff fell was the same condition and the same lettuce leaves as were shown to have existed in the morning.

"It suffices to say that in all material respects the two conditions were identical, but whether or not they were identical is actually not of so much consequence. Where the city falls into error is in assuming that plaintiff was in all events required to show that the leaves upon which she slipped and fell were the very same leaves that her son had seen upon the sidewalk earlier in the day. No such burden reposed upon her, though if it had, the evidence would have fairly warranted the necessary inference as we have already pointed out." (l. c. 515)

We think that this statement supports the views we have expressed herein and is a sound statement of the law with respect to

the quantum of proof in constructive notice cases where a condition rather than a specific defect is relied upon. It seems too clear for argument that a plaintiff could never or at least only very occasionally prove that the general condition which caused his injury was precisely the same general condition which had existed on a prior occasion which he relies upon for proof of notice when, as here, the condition consists of foreign objects or material. Only a continuous chain of evidence or of identifying characteristics peculiar to the substance itself could afford proof of continuity; and in all such cases, it must rest upon a reasonable inference from the evidence presented. McQuillin Mun. Corp. (3rd Ed.), Vol. 19, Section 54.112, states the rule as follows:

"Nevertheless, in order to charge a city, as a matter of law, with notice of a particular defect from its knowledge of the existence of a general one, the first should be of the same character as the latter or, at least, so related to it that the particular defect is a usual concomitant of the general one."

We believe it to be a sound statement of the rule applicable here.

■ On the issue of due care, the City stresses the immense size of its park system and argues that to require it to discover this piece of glass in such an immense park system would, in effect, make it an insurer of plaintiff's safety. We do not accept its assumption necessary to this contention that the duty to which it is held embraces all of the area in every park. Here we have a small playground area where the City had, by the erection of playground equipment, directed the activities of the children. The condition which injured the plaintiff arose within this restricted area. The risk of injury to the plaintiff and others similarly situated arose from the condition of broken beer bottles. From the ambit of that risk arose the City's duty to make the premises safe as to that risk. It does not require us to strain reason to say that the City's duty to remedy this condition of which it had constructive notice included the duty of a vigilant enough search to discover a piece of broken beer bottle six inches by two or three inches in size located in grass which had been beaten down by the children and which was, at most, one or two steps from the hard surface where the swings were located.

There was at least one employee present who knew of the very risk which the plaintiff encountered, the lifeguard who testified that he looked very carefully for glass which he "knew was bound to be in the area." It does not require us to find that the City is an insurer to say that the City, having invited the children to the specific area of these swings and having constructive notice of a condition of broken glass, was under a duty during the several hours that such notice existed to have taken steps to remedy the dangerous condition. Under the facts of this case, we feel that the City has failed to perform its duty of ordinary care to keep Sunnyside Park in a reasonably safe condition in the area where the plaintiff was hurt. Judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion by DIXON, C., is adopted as the opinion of the Court.

All concur.