**Edna JONES,**
**Plaintiff-Appellant/Respondent,**

v.

**ST. LOUIS HOUSING AUTHORITY,**
**Defendant-Respondent/Appellant,**

v.

**Geter RHYMES, d/b/a Rhymes Landscaping Company,**
**Defendant-Respondent/Appellant,**

**and**

**the Toro Company,**
**Defendant-Respondent.**

**Nos. 51029, 51031 and 51081.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 3, 1987.

Motion for Rehearing and/or Transfer Denied March 11, 1987.

Application to Transfer Denied April 14, 1987.

Samuel Goldblatt, Fox, Goldblatt & Singer, Inc., St. Louis, for Edna Jones.

Joel D. Monson and Stuart M. Haw, Anderson, Gilbert, Wolfort, Wolfort, Allen & Bierman, St. Louis, for St. Louis Housing Authority.

Russell Watters, Brown, James & Rabbitt, P.C., St. Louis, for Geter Rhymes.

Kenneth W. Bean, Shepherd, Sandberg, & Phoenix, St. Louis, and Robert Wallis, Haynes, Fullenweider, Houston, Tex., for Toro Co.

KAROHL, Judge.

Plaintiff sued three defendants for the wrongful death of her son. Plaintiff's son, Larry Jones, was struck in the head by a stick thrown from a Toro lawn mower. The jury found defendants St. Louis Housing Authority (Housing Authority) negligent as landowner and Geter Rhymes, d/b/a Rhymes Landscaping Company, negligent as operator of the lawn mower. The jury found in favor of Toro Company, the manufacturer of a riding lawn mower, on plaintiff's products liability claim. It returned a verdict for total damages of $250,000 against defendants Housing Authority and Rhymes. It apportioned the fault 80% to the Housing Authority and 20% to Rhymes. The trial court entered a judg-ment for $250,000 against both defendants. However, the court limited execution on the judgment against the Housing Authority to a total of $100,000. It also entered judgment in favor of Geter Rhymes on his cross-claim against the Housing Authority for 80% of any sum paid by Geter Rhymes in excess of $50,000, but contribution was not to exceed $100,000.

Plaintiff now appeals judgment for the Toro Company. Defendant, Geter Rhymes, appeals judgment for the plaintiff. Defendant, Housing Authority, appeals judgment for plaintiff and judgment on Rhymes' cross-claim.

We have consolidated the appeals. We will first consider the appeals of each defendant because plaintiff's appeal is viable only if we reverse her judgment against defendants Housing Authority and Rhymes. This is the position which plaintiff acknowledged in oral argument.

## FACTS

On September 30, 1981, Larry Jones, a ten year old boy lived with his mother in the Peabody Housing Project. Peabody was owned and operated by defendant St. Louis Housing Authority. On that afternoon Larry met his friend Jermaine Belford at 3:00 p.m. They parted when Larry went to his grandmother's apartment. Larry left the apartment and walked toward an apartment occupied by Janet Jones. Meanwhile, Jermaine was walking toward Larry who was standing in front of the apartment. Jermaine noticed a man cutting grass, which was almost waist high, with a riding lawn mower in the yard on the east side of Janet Jones' apartment. He heard the mower make a loud noise, "[i]t was like—like some ranging up in it." He saw a stick fly out from the lawn mower and strike Larry in the head. He estimated the stick to be about two inches thick and twelve inches long. When hit, Larry screamed for his mother and collapsed into a chair. An ambulance responded to the scene and transported Larry and his mother to Cardinal Glennon Hospital. Larry slipped into a deep coma before arriving at the hospital and he died at 9:39

p.m. on October 1, 1981, from a swelling of the brain.

Mr. Hunter, the maintenance superintendent for the St. Louis Housing Authority, stated at trial the Housing Authority normally cuts the grass at the Peabody Project. An independent contractor was called in prior to the accident because the grass was so high and out of control. The contract with Rhymes Landscaping to cut the grass was made two-three weeks before the accident.

The Peabody Housing Project is located on twenty-seven acres and consists of 650 apartments in 51 buildings. Mr. Hunter stated he had five custodians to maintain the outside of the buildings. Each custodian was assigned to a particular outside area to police and clean on a daily basis, including the area where the accident occurred. He further testified the area was policed and cleared of any debris on a routine daily basis. Hunter stated at trial that if a landscaper was going to remove debris in addition to cutting grass he would expect the contract to state that the contractor would remove any debris. Geter Rhymes stated that a crew from the Housing Authority was to police the area before the grass was to be cut and if he was to police the area the price for his services would be an additional $1,000 or more above the contract price.

Hunter testified that he showed Geter Rhymes the area to be cut. He claimed at trial that he was not aware of any discussion with Geter Rhymes concerning who would police the area. Mr. Kuhlmann, the purchasing agent of the Housing Authority, did not want Rhymes to police the area because he had his own crew. The contract was introduced as evidence. It did not specify that Geter Rhymes was to police the grounds before cutting.

Newton Simpkins, the operator of the Toro Groundmaster 72 riding lawn mower and employee of Geter Rhymes, stated he was cutting grass in an area where the grass was somewhere between his knee and thigh in height. He believed the area had been cleared of any debris prior to his cutting. However, if he saw any object, he would pick it up before mowing.

William Rhymes, son and employee of defendant Geter Rhymes, stated he was at the project the day of the occurrence operating a weed-eater while Simpkins was operating the lawn mower. Rhymes testified that at 3:30 in the afternoon he turned around and saw a young boy holding his head. The boy was calling for his mother and crying. Rhymes began walking toward the boy, as did the boy's mother, who had been in the doorway of the apartment near the area where he was trimming. Rhymes looked over toward the area to where Simpkins was cutting and saw he was mowing around a utility pole. He then walked over to Simpkins and told him to turn off the lawn mower because a child had been hurt. Rhymes observed that the deflector chute was down on the mower. He then stated that a young boy had picked up a stick off the ground around where Larry Jones was standing and handed it to someone. Jermaine gave the stick to Larry's mother. She brought it to the hospital when she accompanied her son in the ambulance.

*Appeal of Defendant Geter Rhymes, d/b/a Rhymes Landscaping, Company from Judgment for Plaintiff.*

Defendant contends three points of trial error, the first of which is plaintiff failed to make a submissible case against landscaper, Rhymes, because plaintiff did not establish with substantial evidence that Rhymes had actual or constructive knowledge that the stick which struck the fatal blow was in the area where grass was being cut.

"When determining whether or not a plaintiff has made a submissible case, the plaintiff's evidence is presumed to be true, any of defendant's evidence to the contrary is disregarded, and the plaintiff is given the benefit of all reasonable and favorable inferences drawn from the evidence." *Howard v. Lundry,* 591 S.W.2d 193, 197 (Mo. App.1979) (citation omitted). "The rule entitling a plaintiff to the most favorable view of the evidence does not authorize courts to supply missing evidence, (citation

omitted), or 'to disregard the dictates of common reason and to accept as correct or true that which obviously, under all the circumstances in evidence, cannot be correct or true, nor does it require us to give plaintiff the benefit of any other than reasonable inferences.' " *Begley v. Connor* 361 S.W.2d 836, 839 (Mo. banc 1962) (citation omitted).

Defendant Rhymes cites *Abraham v. Johnson,* 579 S.W.2d 734, 737 (Mo.App. 1979), for the proposition that this court recognized the necessity of establishing actual or constructive knowledge of an operator of a power mower of the presence of an object which may cause danger within the area being cut before liability is imposed upon the power mower operator. In *Abraham,* we stated, "Although all of the authorities recognize that basic principle, varying factual situations have produced holdings that the evidence was sufficient ... or insufficient ... to support findings of actual negligence on the part of the mowing machine operator." *Id.* at 737.

■ We find the evidence supported submission on the issue of knowledge. Geter Rhymes stated there was a lot of debris lying around in areas where his men were going to cut grass. The debris was there a couple of days before he started the job. Officer Mansell, of the St. Louis Police Department, responded to the call for the emergency and stated that when he walked into the area (meaning the project) he remembered "broken glass and pieces of brick and wood and stuff and trash" all over the area. There was so much debris he stated "it was too much [for him] to determine" what had struck the boy. Jermaine Belford testified that the grass was thick and "you could hardly see it unless you was walkin' through it or something" but, that he noticed "rocks, sticks, paper wraps, and cans, and stuff like that" when he played in that area. Simpkins, the operator of the lawn mower, stated that in some spots one could see debris and depending upon what the debris was, for example, a piece of wood two and one half inches wide by eight or nine inches long, could be seen in the grass depending upon

how it was laying. Geter Rhymes and Newton Simpkins had actual knowledge that debris was in the general area.

In *Abraham,* this court reviewed several cases from other jurisdictions and distinguished two cases which found insufficient evidence to support findings of actual knowledge on the part of the mowing machine operator from other cases that held sufficient evidence supported such an action. The two insufficiency cases are *Stayton v. Funkhouser,* 148 Ind.App 75, 263 N.E.2d 764 (1970) and *Embry v. Henderson,* 511 S.W.2d 218 (Ky.1974). In *Stayton,* the court found that there was no duty on the part of the operator "to minutely inspect the yard" before mowing. "The court pointed out that the plaintiff's evidence failed to show that the condition of the defendant's lawn was abnormal, i.e., was in an unusual condition due to other than natural causes." *Abraham,* 579 S.W.2d at 737. *Abraham* quoted *Stayton,* where the Indiana Appellate Court stated, "However, we do not hold that an injured party may never recover from the owner or operator of a rotary mower that has propelled a foreign object and injured him." *Id.* Defendant Rhymes' employees were aware of the abnormal conditions of the area. They knew the grass was high. They were aware of the powerful mower's propensity to throw objects and that the area contained patches of debris. Rhymes had actual knowledge of these conditions, generally, and at least constructive knowledge of debris in the specific area where the stick was thrown. Plaintiff made a submissible case.

Defendant Rhymes' second point on appeal was that the court erred in submitting plaintiff's verdict directing instruction because: 1) there was insufficient evidence to establish what was a safe distance for keeping people away from the lawn mower; 2) it permitted the jury to find the defendant liable if there was any debris in the yard whether or not the debris was in the area of the mower operator Simpkins and whether or not he had knowledge of debris in the area being cut; and 3) there was insufficient evidence to find that there was "debris in the yard."

"In considering whether an instruction was supported by the evidence at trial, we view all the evidence in the light most favorable to the offering party, giving that party the benefit of all favorable inferences reasonably drawn therefrom and disregarding evidence to the contrary." *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502 (Mo.App.1979). Plaintiff is entitled to an instruction on the theory of her own evidence. *Welch v. Sheley*, 443 S.W.2d 110, 118 (Mo.1969). "Each element of a disjunctive instruction such as that submitted by [plaintiff], must be supported by substantial evidence and lack of such support or any theory submitted renders the instruction erroneous." *Stanfill v. City of Richmond Heights*, 605 S.W.2d at 502.

The trial court submitted the following instruction as a verdict director against defendant Rhymes:

### INSTRUCTION NO. 9

Your verdict must be for plaintiff against defendant Geter Rhymes, d/b/a Rhymes Landscaping Company if you believe:

First, plaintiff was the natural mother of Larry Jones, and

Second, Newton Simpkins was an employee of Geter Rhymes, d/b/a Rhymes Landscaping Company and was operating Geter Rhymes' Groundmaster 72 within the course of his employment by Geter Rhymes, d/b/a Rhymes Landscaping Company at the time of the occurrence, and

Third, either:

*Newton Simpkins operated the Groundmaster 72 contrary to instructions and warnings to keep people a safe distance away, or Newton Simpkins operated the Groundmaster 72 with debris in the yard, and*

Fourth, Newton Simpkins in any one or more of the respects submitted in paragraph Third was thereby negligent, and

Fifth, such negligence either directly caused Larry Jones' death or combined with the acts of St. Louis Housing Authority or the condition of the Groundmaster 72 to directly cause the death of Larry Jones.

Acts were within the "scope and course of employment" as that phrase is used in this instruction if:

1. they were part of the work Newton Simpkins was employed to perform, and

2. they were done by Newton Simpkins to serve the business of Geter Rhymes, d/b/a Rhymes Landscaping Company.

The term "negligent" or "negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances. (emphasis ours)

We find the evidence supports submission of Instruction No. 9 to the jury. In regard to the first disjunctive appellant Rhymes admits the labeled instruction attached to the Toro Groundmaster 72 states, "[K]eep people and pets a safe distance away from the machine." The issue in the present disjunctive turns on what is a safe distance away from the lawn mower in the evidence before the jury. Rhymes contends the jury was allowed to engage in a *post hoc* examination of what is a "safe distance." We disagree.

John Beattie, for the Toro Company, testified as an expert that if a person was within view of the operator, it would be unsafe to operate the lawn mower. Beattie responded to plaintiff's following cross-examination:

Q. Would 50 feet be a safe distance?
A. Certainly a person within view of the operator at—under these circumstances, yes?
Q. You say it would be safe?
A. No. I said you would be able to see the person in those locations.

According to Beattie's testimony a "safe distance" was where no person was in view of the mower. It can be inferred that this distance was at least 50 feet. Simpkins, the lawn mower operator, testified he was

"instructed not to cut grass, not to operate the lawn mower when kids were around." This instruction recognizes that it was not safe to operate this mower in the vicinity of visible children.

In regard to the second disjunctive that "Newton Simpkins operated the Groundmaster 72 with debris in the yard" we find, as in defendant's first claim of error, both Geter Rhymes and Newton Simpkins were aware of debris in the area. In this disjunctive the issue turns on the phrase "debris in the yard." Defendant contends this phrase is vague and indefinite and it permits a jury to find appellant Rhymes liable even though debris may not be in the area where Newton Simpkins was operating the lawn mower. Defendant cites *Grindstaff v. Tygett*, 655 S.W.2d 70, 74 (Mo.App.1983) for the proposition that the submission of this disjunctive was misleading and confusing in defining the factual guideline on which the jury could determine negligence thus giving the jury a "roving commission" to speculate and to determine on its own why and what manner Rhymes was negligent.

Defendant's reliance on *Grindstaff* is misplaced. In *Grindstaff* the phrase "when such procedure was not medically proper" was used in an instruction. In *Grindstaff*, this Court found the phrase did not submit the ultimate facts which define for the jury the plaintiffs' theory of negligence because the instruction was susceptible to different interpretations.

We find the instruction used in the second disjunctive in the case at bar did not give the jury a roving commission to speculate and to determine on it's own why and in what manner Rhymes was negligent. Rhymes contends the use of this phrase "debris in the *yard*" is susceptible to different interpretations.

However, we find the use of the word "yard" is even more specific than the alternative use of the word "area." Yard, as defined in *Webster's Third New International Dictionary*, (1981) is "1 a: a small usu. walled and often paved vacant area open to the sky and adjacent to a building: COURT b: the grounds of a public building or group of buildings....." The jury did not have to act on a roving commission to determine the meaning of the word "yard" in this instruction. The area Simpkins was mowing was between buildings and even if the jury was to interpret that Simpkins had knowledge of debris in any other area, but not specifically in the exact area where he was then mowing at the time of the accident, the fact remains he had knowledge of debris at the Peabody Project and it would be reasonable for the jury to infer that the immediate area would have similar conditions. Officer Mansel said debris was all over the area. The fatal stick was not small, it was 2″ by 12″ in size.

The fact that Simpkins had knowledge of debris in the yard, generally, was not in dispute. Simpkins testified he picked up objects he saw on the ground. The stick in question was relatively large. Geter Rhymes testified that he had actual knowledge of a lot of debris in areas where his men were going to cut grass. Knowledge of the general condition throughout the grounds satisfies the requirement of knowledge of the specific area and the specific item of debris. *Catalano v. Kansas City*, 475 S.W.2d 426, 429 (Mo.App.1971). Knowledge of the alleged stick was not in dispute because general knowledge was not in dispute. Rhymes' request for new trial was on the ground argued here, the instruction did not require a finding of actual or constructive knowledge of the specific item of debris localized to the area where the stick lay. No claim was made before the trial court or on appeal that the second disjunctive in paragraph Third of the instruction was defective because it had the effect of directing a verdict against Rhymes if Simpkins was operating the Groundmaster 72 (not disputed) with debris in the yard somewhere (not disputed). The failure of defendant Rhymes to claim error on the ground that the instruction had the effect of directing a verdict may be explained by noting Rhymes' general knowledge of a lot of debris in the area to be cut was not a disputed fact. We are asked to decide and we do decide only that the instruction was not defective because as the

claim of error alleges, it "permitted the jury to find appellant Rhymes liable ... whether or not Joe Simpkins had actual or constructive knowledge of any debris in the area where the grass was being cut." Geter Rhymes, by his own testimony, did not contest his knowledge of this fact. Simpkins' knowledge of the general condition sufficed to satisfy the claim of error relating to the area being cut and the debris in that area. Point denied.

Defendant Rhymes third point is in response to a cross-appeal against defendant St. Louis Housing Authority and is addressed later in this opinion.

*Appeal of Defendant St. Louis Housing Authority from Judgment for Plaintiff.*

Defendant St. Louis Housing Authority (hereinafter, Housing Authority) contends five points on appeal which contest plaintiff's judgment and one point of error regarding the cross-claim of defendant Rhymes.

Housing Authority's first point on appeal is "[t]he trial court erred in overruling [its] motion for judgment not withstanding verdict because as a municipal corporation it was entitled to sovereign immunity from tort liability and plaintiff failed to prove facts sufficient to bring the case within one of the exceptions to sovereign immunity." We disagree.

■■■ We find that the plaintiff pled and proved the necessary facts that brings this case within an exception set forth in § 537.600(2), RSMo 1978.

The relevant portion of § 537.600, RSMo 1978 reads:

537.600. SOVEREIGN IMMUNITY IN EFFECT–EXCEPTIONS–WAIVER OF. —Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that for negligent acts or omissions is hereby *expressly waived in the following instances:*

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff established that *the property was in dangerous condition* at the time of the injury, that the injury directly resulted from the dangerous condition, that the *dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred,* and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. (emphasis ours)

The Missouri Supreme Court in *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831 (Mo. banc 1985) set forth a four part test to establish a claim within the dangerous condition of property exception to sovereign immunity under § 537.-600(2). The criteria are:

(1) a dangerous condition of the property;

(2) that the plaintiff's injuries directly resulted from the dangerous condition;

(3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and

(4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition.

*Kanagawa,* 684 S.W.2d at 835.

In *Kanagawa,* the Missouri Supreme Court relied on the *Twente v. Ellis Fischel State Cancer Hospital,* 665 S.W.2d 2 (Mo. App.1983) in considering the meaning of § 537.600(2) RSMo 1978. *Twente* considered the issue whether a dangerous condition existed on the property of a municipal corporation. "In *Twente,* the plaintiff sued a state-owned hospital and the Department of Social Services for injuries she sustained when assaulted and raped on the hospital's parking lot. Suit was brought on

the theory that defendants, by negligently maintaining their property in a dangerous condition, exposed plaintiff to an intentional tort at the hands of a third party. The dangerous condition alleged, included knowledge of prior assaults on or near the parking lot, a[n] inadequate security staff to effectively guard the grounds and the absence of the guard assigned to police the parking lot." *Kanagawa*, 685 S.W.2d at 835. *Twente* was decided by our Brethern in the Western District. They held that the petition failed to allege a "dangerous condition." After reviewing the impetus creating the statute and in a strict reading of § 537.600(2), they determined that "dangerous condition" as used in the statute "refers to defects in the physical condition of the public entity's property." *Twente*, 665 S.W.2d 2, 11–12. In *Kanagawa*, a case factually similar to *Twente*, a third party, i.e. an escaped inmate, caused the plaintiff's injuries.

The facts in the present case materially differ from *Kanagawa* and *Twente*. Here the Housing Authority was responsible for exterior maintenance of the project. The Housing Authority had five custodians whose sole responsibility was to police the grounds for debris and to mow the lawn. However, on September 30, 1981, the Housing Authority custodians were unable to perform their duty of mowing the lawn and contracted Geter Rhymes to perform that task because the grass had grown out of control. The grass was over 2–3 feet in height, "waist high." Accordingly, Mr. Hunter of the Housing Authority, stated that during his previous operations of the lawn mowers at Peabody he would direct people away from the area being mowed because of his fear of something flying from one of the mowers. The fact that the Housing Authority subcontracted the mowing would not decrease the likelihood that something might fly from one of the mowers and did not diminish the Housing Authority's responsibility to avoid injury from flying debris by removal of such debris. Hunter had knowledge of the danger involved when cutting grass with debris on the ground. The evidence and inferences in support of the plaintiff's theory established there was considerable debris on the ground in the yard prior to the occurrence. The Housing Authority thereby permitted the physical deficiency in the grounds and consequently created a "dangerous condition." This physical deficiency would be no different than a situation in which the Housing Authority would dig a trench and leave it unattended without barriers or warnings and consequently someone would injure themselves in that trench. The mowing contract did not alter the duty of the Housing Authority to clear the area. The injuries in *Kanagawa* and *Twente* resulted from negligence in failure to supervise or protect against acts of others in contrast to the present facts where the condition of the property—litter and debris—directly caused the injury. Point one is denied.

Housing Authority's second contention is the court erred in entering or in refusing to reduce the judgment against it from $250,-000 to $100,000 because of the limitations set in § 537.610.2 RSMo 1978. That section provides inter alia, "[t]he liability of the state and its public entities ... shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence ... and no amount in excess of the above limits shall be awarded or settled upon." We agree.

The jury determined damages against the defendants St. Louis Housing Authority and Geter Rhymes in the amount of $250,000 and assessed fault 80% against the former, 20% against the later party. The trial court entered judgment in accord with the verdict. However, the judgment also provided:

> Pursuant to Section 537.610 Subparagraph 2, the Court hereby limits plaintiff's recovery against defendants, St. Louis Housing Authority to $100,000.

Thereafter, the Housing Authority filed a motion to reduce the judgment pursuant to the award limitation in § 537.-610.2 to $100,000. The trial court on December 19, 1985, in ruling on this motion merely referred to the above judgment and its previous limitation on recovery and refused to grant the remedy sought by the

Housing Authority. We find this view is based upon a misreading or misapplication of the statute. There was one injury and one occurrence. The focus of the statutory exception is in these terms, persons and accidents, not in the number of claims where only one person was injured. The exception is legislative. We do not find that the legislature intended principles of contribution, indemnity or comparative fault to be applied to expand the single person limitation in § 537.610 beyond the limit of $100,000.00. Statutes porporting to waive sovereign immunity should be strictly construed against those seeking to establish such waiver. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 868 (Mo. banc 1983). The judgment for plaintiff against the Housing Authority is for the death of her son in the amount of $100,000. Only one accident or occurrence damaged one person. If the one person limitation is not applied the provisions after "occurrences" which read, *"and* shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence ... and no amount in excess of the above limits shall be awarded or settled upon", would be excised from the statute. The award may not exceed the limit. Accordingly, the judgment for Plaintiff is limited to $100,000.

Housing Authority's third contention is "the trial court erred in allowing plaintiff's attorney to read to the jury portions of the hospital records that constituted the 'history' of plaintiff's injury as these portions were hearsay." Plaintiff's attorney, toward the close of the plaintiff's case, read into evidence a portion of decedent's records from Cardinal Glennon Memorial Hospital. These records included portions consisting of the "history" as to how plaintiff's son had been injured. Counsel for all the defendants including the St. Louis Housing Authority objected to the reading of these portions on the ground that they were hearsay. The trial court overruled these objections. Plaintiff's attorney then proceeded to read from the record several accounts, all to the general effect that the decedent had been struck on the head by a piece of wood thrown by a lawn mower, had called for his mother, and he had collapsed, screaming wildly and then falling into a coma.

We find the excerpts from the record read into evidence by plaintiff's attorney were not matters observed by the hospital personnel at the time they were written down and not presented for the purpose of diagnosis and treatment. Consequently, they were hearsay and not admissible under the "medical treatment" exception. The hospital personnel had not seen the accident, nor could they have been informed of these matters by decedent for he was comatos upon arrival at the hospital and at all times thereafter. Decedent's mother could not have informed the personnel of the hospital of these facts for she was not a witness to the accident. The historical account of the accident in the hospital records therefore consisted of accounts given by unknown persons.

Defendant cites *Holmes v. Terminal R.R. Association of St. Louis*, 257 S.W.2d 922 (Mo.1953) for the proposition that these records were hearsay and excludable. It recognizes that in *Breeding v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281 (Mo. banc 1984), *Holmes* and similar cases were overruled on this point. The reasons given in *Breeding* for overruling *Holmes,* and similar cases, is distinguishable from the case at bar. The medical history we are considering would be inadmissible as hearsay even under the rule announced in *Breeding. Holmes,* held that a person who was about to undergo medical treatment might be relied upon to give a truthful account of his present symptoms and conditions but that any account he gave of past occurrences would be less trustworthy and as such excluded from evidence. In *Breeding,* the court adopted the reasoning of Judge Smith in *Hughey v. Graham*, 604 S.W.2d 626 (Mo.App.1980) for abandoning the hearsay rule regarding medical past history:

> People generally realize that for a physician to bring his skill to bear he must have accurate information on the patient's condition from the patient himself. McCormick, Evidence 2d Ed. (Hornbook

Series) Ch. 29, Sec. 292. It would logically follow that if the patient can be presumed to be truthful in that circumstance (as to his present complaints and symptoms), he can equally reasonably be presumed to be truthful concerning that portion of his past medical history necessary for the physician to correctly diagnose and treat his present condition. There would appear therefore no logical reason to hold that reliability exists as to the present symptoms and complaints but fails to exist for past medical or physical history.

*Breeding v. Dodson*, 679 S.W.2d at 285.

In *Breeding*, the Supreme Court stated, "the hospital record admitted in this case contains no statement which is not reasonably pertinent for proper diagnosis. The facts that an accident occurred and that plaintiff was struck from behind are not in dispute. Therefore, the trial court properly admitted the plaintiff's remarks noted in the hospital record." The rationale of *Breeding* and *Hughey*—diagnosis and treatment suggest reliability—is not present here because the information was from an unknown source and the patient was comatose at all pertinent times.

■ However, we find the error was not prejudicial. The history read into evidence from the hospital records was as follows:

This ten-year-old black male was brought to the emergency room after apparently being hit in the side of the head with a piece of wood thrown by a lawn mower. After being struck on the head the patient apparently screamed and then fell over and cried vigorously for about five minutes. He then went into a deep coma. When brought to the emergency room he has bilaterally fixed and dilated pupils with a decerebrate posturing....

Other records from the hospital were admitted into evidence reciting essentially the same facts. We find no prejudicial error because the testimony complained of by defendant was cumulative and not inherently prejudicial. Prior testimony indicated the decedent was hit in the side of the head with a piece of wood thrown from a lawn mower and that he screamed and fell over and cried. His coma condition was patently obvious as well as other observations. Point three is denied.

Defendant Housing Authority's fourth point of error is the trial court erred in allowing Mr. Newton Simpkins to testify as to his "impression" that the St. Louis Housing Authority was supposed to clean up the area before the lawn mowers got there.

Newton Simpkins, an employee of Geter Rhymes, operated the riding mower that threw the piece of wood against decedent's head. He was called to the stand by plaintiff and the following testimony took place during direct examination:

Q. All right. And at that particular time when you were cutting the grass did you post any signs or any warning here, grass being cut or any warning signs of any kind to let *people know* that you were cutting grass?

A. Well, I was under the impression that *they* knew because the Housing Authority—

Q. Go ahead. I'll let you answer.

MR. MUNSON: Your honor, I'll object what he was under the impression of knowing.

THE COURT: Overruled. He may answer.

Q. (By Mr. Goldblatt) You may answer, sir.

A. Knew who cut because the Housing Authority was supposed to come through there and clean everything up before we got there so—

MR. MUNSON: Your Honor, again I'm going to object, and ask that the jury be instructed to disregard this because there's been no proper foundation for any knowledge.

MR. WATERS: Well, wait a minute. Your Honor, I have to object. There is already—Mr. Hunter has testified that was, in fact, I believe the case, and he's just simply reiterating that testimony because he was the worker out there.

THE COURT: Objection be overruled. (emphasis ours)

Defendant states the court allowed Simpkins "to testify as to his impression" that the Housing Authority was supposed to clean up before the mowers got there. However, plaintiff asserts that a fair analysis of Simpkins testimony does not reveal this at all. We agree with the plaintiff's assertion.

We find the "they" (see our emphasis) in Simpkin's testimony refers to the people posited in plaintiff's attorney's previous question, meaning the people who lived in the Project. Simpkins testimony is he did not have to warn the people that he was going to mow in the area because he thought they already knew and because the Housing Authority was to have previously cleared the area. Simpkins did not testify that he was under the "impression" the Housing Authority had the duty to clean up. Further, there was ample evidence that the duty to clean the project of debris remained with defendant, Housing Authority. We find no prejudicial error in this statement nor abuse of discretion of the trial court. Qualification of a witness is primarily a question for determination by the trial judge whose discretion will not be overruled unless clearly abused. *Earney v. Clay,* 516 S.W.2d 59, 65–66 (Mo.App. 1974). Point four is denied.

Defendant Housing Authority's fifth contention of error was the giving of instruction No. 7, "which gave the jury a roving commission as to what 'debris' made the yard unsafe to mow and which was not supported by any evidence of knowledge by the Housing Authority of a piece of wood in the fatal area." Housing Authority's point of error is similar to defendant Geter Rhymes' contention of instructional error. Defendant Housing Authority contends that "debris in the yard" was a vague plural phrase used by plaintiff in the instruction and gave the jury a roving commission to speculate as to the facts in the case. We have already determined this phrase is not vague on the facts of this case nor does it require the jury to hypothecate as to the facts.

Plaintiff submitted the following instruction:

INSTRUCTION NO. 7

Your verdict must be for plaintiff against defendant St. Louis Housing Authority if you believe:

First, plaintiff was the natural mother of Larry Jones, and

Second, the yard was in the possession and control of defendant St. Louis Housing Authority and was used by tenants of defendant with its consent, and

Third, there was debris in the yard and as a result the yard was not reasonably safe to mow, and

Fourth, St. Louis Housing Authority knew or by using ordinary care could have known of this condition, and

Fifth, St. Louis Housing Authority failed to use ordinary care to make the yard reasonably safe to mow, and

Sixth, such failure either directly caused the death of Larry Jones or combined with the acts of Geter Rhymes, d/b/a Rhymes Landscaping Company or the condition of the Groundmaster 72 to directly cause the death of Larry Jones.

The term "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Housing Authority relies principally on the case *Lucky v. Avon Products, Inc.,* 589 S.W.2d 364 (Mo.App.1979) for the proposition that "debris in the yard" is a vague plural phrase and as such gave the jury a roving commission to find decedent had been killed by sticks, or stones, trash or stuff from anywhere in the area. Defendant's reliance on *Lucky* is misplaced. In *Lucky,* the plaintiff truck driver alleged the defendant employer negligently loaded the truck in a manner such that material within the trailer would shift and cause it to overturn. There, defendant employer alleged that driver was negligent in the handling of the vehicle and the issue was why the truck went out of control and overturned. The court found reversible error in a disjunctive submission charging that the jury should find for the employer

(defendant) if driver "failed to keep the truck under control"; by such charge the trial court failed to confine the jury's consideration to the factual issues and gave the jury a prohibited roving commission. The instruction in *Lucky* failed to submit the factual issue underlying "out of control."

 In the case at bar we find instruction No. 7 submitted ultimate factual issues to the jury for their determination. The factual issues were condition, notice of condition and the failure to remedy the condition. As previously stated, the Housing Authority had five custodians whose duties were to police the grounds on a daily basis and mow the grass. A month prior to the incident there was evidence the debris in the yard was around the area where cutting caused the casualty. Jermaine Belford testified the area Simpkins mowed contained rocks, sticks and cans. He testified this debris could be seen within the grass. Officer Mansell testified that when he arrived at the scene of the accident there was debris generally all over the area consisting of glass, brick and wood. Geter Rhymes testified the Housing Authority was going to police the grounds before his crew commenced mowing. The Housing Authority failed to adequately police the grounds before the grass was mowed. The accident occurred on the second or third day of mowing. This is sufficient notice to the Housing Authority that its contractor was on the grounds cutting the grass per the contract. The instruction was not defective for vagueness so as to permit a speculative jury.

The holding in *Catalano v. Kansas City*, 475 S.W.2d 426 (Mo.App.1971), indicates that in order to charge the Housing Authority with notice of debris in the immediate area where Newton Simpkins was mowing, the Housing Authority's knowledge of the existence of the general defect—debris consisting of sticks, stones, trash and stuff throughout the grounds was sufficient. There was sufficient evidence because the specific defect (debris in the immediate area of the operator) was of the same character as the general defect, that is, the debris found throughout the 27 acres of the grounds. The particular defect of the high grass with debris laying in the specific area where Simpkins was mowing the lawn and where Larry was struck in the head is a usual concomitant of the general defect. *See, Catalano*, 475 S.W.2d at 429.

Finally, Geter Rhymes testified the Housing Authority assured him they would clean up the area prior to the mowing; that he would have charged $1,000 more had it been a part of the contract for him to do so. Mr. Kulhmann, in charge of procurement for the Housing Authority, noted had the contract between Geter Rhymes and the Housing Authority required Rhymes to police the grounds, he would have expected the contract to specifically state that Rhymes was to do so. The contract was admitted into evidence and there was no specification indicating that Rhymes was to police the grounds. Point five is denied.

Housing Authority's sixth and final point relates to the contribution claim of Rhymes vs. the Housing Authority. The Housing Authority claims the, "trial court erred in ordering that 80 percent of any amount in excess of $50,000 that Geter Rhymes is required to pay plaintiff should be a judgment for Geter Rhymes against St. Louis Housing Authority." If permitted by § 537.610 RSMo 1978 the effect of this judgment would be that the Housing Authority must pay $80,000 to defendant Rhymes. As a result the Housing Authority would pay plaintiff $100,000, Rhymes would pay to plaintiff $150,000 and collect from Housing Authority 80% of all over $50,000 or $80,000.

The jury returned a verdict of $250,000 for plaintiff and apportioned fault 80% to the Housing Authority and 20% to Geter Rhymes. The original judgment conformed to the verdict. The parties had agreed that defendant Rhymes' cross-claim for apportionment of fault could be taken by the trial court along with the evidence. Thereafter, the trial court after considering various post-trial motions, made the following order on December 19, 1985:

The court orders that 80 percent of any amount in excess of $50,000 that Geter

Rhymes, d/b/a Rhymes Landscaping Company is required to pay by virtue of the judgment previously entered in this case is then to be a judgment for Geter Rhymes, d/b/a Rhymes Landscaping Company on its cross-claim against St. Louis Housing Authority, but said 80 percent shall not exceed $100,000 as per statute No. 537.610. The court considers this a separate claim under that statute.

■ We find this order is prohibited by the provisions of § 537.610 RSMo 1978, which provides that the liability of a public entity "... shall not exceed *one hundred thousand dollars ($100,000) for any one person in a single accident or occurrence* ... and no amount in excess of the above limits shall be awarded or settled upon." (emphasis ours) Statutes purporting to waive sovereign immunity must be strictly construed against those seeking to establish such waiver. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 868 (Mo. banc 1983). The judgment for plaintiff against the Housing Authority is for the death of her son in the amount of $100,000. Only one accident or occurrence damaged one person. The judgment for plaintiff exhausts the limit of liability.

Defendant Rhymes relies on *State ex rel. General Electric Company v. Gaertner*, 666 S.W.2d 764, 766 (Mo. banc 1984) which held a claim for contribution between defendants or joint tort feasors is a separate and distinct claim from the tort claim brought by plaintiff against the defendants. In his brief Rhymes emphasizes claims not occurrences or persons. The Missouri Supreme Court in deciding *General Electric v. Gaertner*, as well as *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983) were not called upon to consider the situation as where a co-defendant has been held jointly and separately liable with a municipal corporation enjoying sovereign immunity except for the statutory exceptions. Plaintiff and Rhymes have separate claims but the provisions of § 537.610 describe a liability shield for defendant Hous-

ing Authority beyond $100,000 for any one person in a single accident.

Accordingly, because the verdict of the jury on plaintiff's claim imposes liability upon the Housing Authority in excess of the maximum allowed under § 537.610, Rhymes may not be awarded judgment against the Housing Authority on his cross-claim seeking apportionment of relative fault except for contribution in an amount equal to any sum recovered by plaintiff from Rhymes in excess of $150,000. The doctrine enunciated in *Missouri Pacific Railway Co. v. Whitehead and Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978) expressly holds the apportionment of relative fault between defendants is to have no effect upon a plaintiff's right to collect the full amount of his judgment from any one of the joint tortfeasors. *Id.* at 474. Therefore, statutory and decisional constraints prohibit the entry of judgment in accordance with the verdict of the jury insofar as it purports to settle the proportion of fault between the two defendants. The exposure of the defendant Housing Authority is limited to $100,000 and plaintiff may not have judgment against that defendant for any greater amount. She may execute upon her judgment against defendant Rhymes for the full amount thereof, but Rhymes is entitled to recover over against the Housing Authority until the latter has paid the full amount of the statutory limit.

We find we need not consider defendant Rhymes' third point on appeal which, in effect, asserts the trial court erred in not granting Rhymes a judgment on his cross-claim for $100,000.

### Appeal of Plaintiff on Verdict and Judgment in Favor of Defendant Toro Company.

Plaintiff Jones claimed two errors which would require a new trial against Toro Company. Generally, these errors claimed the court failed to permit a proper hypothetical question to plaintiff's expert and the court misstated testimony of plaintiff's eye-witness Jermaine Belford and the mis-

statement may have improperly influenced or caused the verdict in favor of defendant Toro.

We need not extend this opinion by discussing plaintiff's claim of errors in detail. Plaintiff acknowledged in oral argument that her appeal against Toro was intended to protect her position in the event the appeals of the Housing Authority and Rhymes were determined adversely to her judgment. Suffice it to say that we have analyzed both points and find that the misstatement of evidence involving the direction of operation of the lawn mower was made and corrected. The problem relating to the hypothetical question was solved by a subsequent hypothetical question and answer. Nor did the plaintiff make a sufficient offer of proof to preserve the hypothetical question claim of error.

We remand with instructions that the trial court enter judgment in accordance with this opinion. The judgment in favor of defendant Toro Company and against plaintiff should be affirmed. The judgment should be entered in favor of plaintiff and against defendant Geter Rhymes, b/d/a Rhymes Landscaping Company in the total sum of $250,000 plus interest and costs; and in favor of plaintiff and against defendant Housing Authority in the sum of $100,000 plus interest and costs; plaintiff is ordered to acknowledge satisfaction of judgment in full against defendant St. Louis Housing Authority upon the payment by said defendant of the sum of $100,000, the limit permitted by § 537.610, RSMo 1978, plus interest and costs. The judgment against defendant Housing Authority is inclusive of the judgment against defendant Rhymes and not in addition thereto. Judgment should also be entered in favor of defendant Rhymes against the Housing Authority for any part of the judgment Rhymes is required to pay to plaintiff in excess of $150,000 plus interest and costs. The costs of these proceedings are to be paid equally by defendants St. Louis Housing Authority and Geter Rhymes, d/b/a Rhymes Landscaping Company.

Judgment affirmed in part and reversed and remanded in part, with instructions.

PUDLOWSKI, P.J., and CRANDALL, J., concur.