OPINION
{¶ 1} On September 24, 1996, Brinda Gore was riding in a limousine on Interstate 270 when a window in the limousine was shattered by flying debris and Brinda was seriously injured. An employee of Buckeye Interstate Contracting, Inc. ("Buckeye"), had been mowing the median strip for Interstate 270 with a Bush Hog and had struck a tire casing, propelling the tire casing into the traveled lanes where it struck the limousine. Buckeye was doing the mowing under the terms of a contract with the Ohio Department of Transportation ("ODOT").
 {¶ 2} On September 23, 1998, Brinda Gore sued ODOT in the Court of Claims of Ohio. The court ordered the issues of liability and damages bifurcated for trial. By agreement, the parties filed simultaneous cross-motions for summary judgment as to liability. Eventually, ODOT was granted summary judgment.[1] Counsel for Ms. Gore has now pursued a direct appeal of that judgment, assigning three errors for our consideration:
 {¶ 3} "Assignment of Error No. 1:
 {¶ 4} "The trial court erred to Appellant's prejudice by granting Appellee's motion for summary judgment, and by denying Appellant's motion for summary judgment.
 {¶ 5} "Assignment of Error No. 2:
 {¶ 6} "The trial court erred by failing to find under the totality of the circumstances presented by the evidence in the record that mowing the I-270 median on September 24, 1996, at the time of the subject accident, was inherently dangerous work, or that in the alternative, that if not inherently dangerous work, it created, under the totality of the circumstances, unreasonable risk of harm to the traveling public that it required Appellee to take certain precautions to remove the unreasonable risk of harm it created, which Appellee did not.
 {¶ 7} "Assignment of Error No. 3:
 {¶ 8} "The trial court erred by failing to find that appellee's duty to motorists traveling on I-270 was not delegable to Appellee's independent contractor, by the common law of contract or negligence, that Appellee breached its duty to Appellant and thereby proximately caused injury to her, and should therefore be found liable as a matter of law, and summary judgment granted to Appellant, or in the alternative, there being genuine issues of material fact, the case should be remanded for trial on the merits."
 {¶ 9} Because the first assignment of error is expressed in general terms and its resolution is dependent in part upon our disposition of the remaining assignments of error, we will discuss the applicable standard for review, then address the second and third such assignments before deciding the first.
 {¶ 10} When an appellate court reviews a case concluded at the trial level by summary judgment, it does so de novo, applying the same standards as required of the trial court. Ryberg v. Allstate Ins. Co. (July 12, 2001), Franklin App. No. 00AP-1243, citing Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588.
 {¶ 11} Civ.R. 56(C) provides:
 {¶ 12} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"
 {¶ 13} Summary judgment is appropriate where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the non-moving party. Ryberg, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
 {¶ 14} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of one or more of the non-moving party's claims for relief. Dresher v. Burt (1996), 75 Ohio St.3d 280,292. If the moving party satisfies this initial burden by presenting or identifying appropriate Civ.R. 56(C) evidence, the nonmoving party must then present similarly appropriate evidence to rebut the motion with a showing that a genuine issue of material fact must be preserved for trial. Norris v. Ohio Standard Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 15} As a general rule, although an employer may be liable for the negligent acts of an employee within the scope of that employment, one who engages an independent contractor is not liable for the negligent acts of the contractor or its employees. Pusey v. Bator (2002),94 Ohio St.3d 275, 278, 2002-Ohio-795. The distinction relates to the right to control the manner of performing the work, and if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship exists. Id. at 279. There is no dispute that Buckeye acted as an independent contractor for ODOT. Their contract included a provision which stated:
 {¶ 16} "Any object moveable by hand which interferes with the mowing operation shall be removed from the mower's path by the Contractor."
 {¶ 17} Under this provision, Buckeye had the obligation[2] to look out for and remove debris such as the tire casing struck by its commercial mower on September 24, 1996. The crucial issue in the trial court was whether ODOT could transfer the responsibility to mow the median to a private company and be free from liability for any injuries caused by the way the mowing was conducted.
 {¶ 18} Ohio case law indicates that a person or entity cannot assign activities which are inherently dangerous to a third party and automatically be free from responsibility for injuries caused when the inherently dangerous activity is conducted. See, e.g., Richman Bros. Co. v. Miller (1936), 131 Ohio St. 424, and Pusey, supra, at 279. A key question for the trial court then became whether or not the mowing of a median strip is inherently dangerous activity.
 {¶ 19} Pusey discusses at some length how a court can determine when work is inherently dangerous. At pages 279-280 of its opinion, the Supreme Court of Ohio indicated:
 {¶ 20} "Work is inherently dangerous when it creates a peculiar risk of harm to others unless special precautions are taken. See Covington Cincinnati Bridge Co. v. Steinbrock Patrick (1899), 61 Ohio St. 215, 55 N.E. 618, paragraph one of the syllabus; 2 Restatement of the Law 2d, Torts, Section 427; Prosser Keeton at 512-513, Section 71. Under those circumstances, the employer hiring the independent contractor has a duty to see that the work is done with reasonable care and cannot, by hiring an independent contractor, insulate himself or herself from liability for injuries resulting to others from the negligence of the independent contractor or its employees. Covington at paragraph one of the syllabus.
 {¶ 21} "To fall within the inherently-dangerous-work exception, it is not necessary that the work be such that it cannot be done without a risk of harm to others, or even that it be such that it involves a high risk of such harm. It is sufficient that the work involves a risk, recognizable in advance, of physical harm to others, which is inherent in the work itself. 2 Restatement of the Law 2d, Torts, at 416, Section 427, Comment b.
 {¶ 22} "The exception does not apply, however, where the employer would reasonably have only a general anticipation of the possibility that the contractor may be negligent in some way and thereby cause harm to a third party. For example, one who hires a trucker to transport his goods should realize that if the truck is driven at an excessive speed, or with defective brakes, some harm to persons on the highway is likely to occur. An employer of an independent contractor may assume that a careful contractor will take routine precautions against all of the ordinary and customary dangers that may arise in the course of the contemplated work. Id. at 385, Section 413, Comment b; Prosser Keeton at 514-515, Section 71.
 {¶ 23} "The inherently-dangerous-work exception does apply, however, when special risks are associated with the work such that a reasonable man would recognize the necessity of taking special precautions. The work must create a risk that is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity arising out of the particular situation created, and calling for special precautions. 2 Restatement of the Law 2d, Torts, at 385, Section 413, Comment b; Prosser Keeton at 513-514, Section 71." Id.
 {¶ 24} Anyone who has mowed a lawn knows that when whirling blades strike a movable object, the movable object can be propelled at great speed in any direction. Anyone or anything can be struck by the hurtling object, causing significant damage. As a result, home lawnmowers have numerous guarding mechanisms and come draped in a variety of warnings. The manufacturers of home lawn mowers know that lawn mowing can be dangerous.
 {¶ 25} Commercial lawnmowers do not have the extensive guarding mechanisms present in the normal lawnmower purchased for use at home. A Bush Hog has significantly less guarding than a home lawnmower. As a result, mowing with a Bush Hog can be a dangerous activity because when the Bush Hog hits a movable object, the object can become airborne in any direction.
 {¶ 26} ODOT did not dictate the means to be used to mow the median. Clearly, ODOT expected that the mowing would be done with some sort of commercial mowing apparatus, probably with the use of a tractor. Hence, ODOT placed restrictions upon tractors being used in ditch bottoms. However, ODOT merely wanted the grass in the median cut and did not instruct bidders how to do the work. Buckeye used tractors pulling Bush Hog mowers which cut a 15' 5" swath at a time. Buckeye was responsible to ODOT for the result alone, the means for cutting the grass in the median having been left to it as an independent contractor.
 {¶ 27} In short, cutting grass is not automatically or inherently dangerous activity. What can make it dangerous is the equipment used. A well guarded mower can be relatively safe. A commercial mower with less guarding is much more dangerous. However, we cannot hold ODOT responsible for the means used to cut the grass in the median if grass cutting is not automatically or inherently dangerous. The inherently-dangerous-work exception applies only to dangerous work and does not extend to proper work, dangerously done. Joseph v. Consol. Rail Corp. (Oct. 30, 1987), Butler App. No. CA87-05-065. The trial court correctly addressed and resolved this issue.
 {¶ 28} We also cannot say that mowing the grass on a median strip of an interstate highway created an unreasonable risk of harm to the traveling public. ODOT's duty to the traveling public is to maintain the system of highways free from unreasonable risk by exercising reasonable care. Roadway Express, Inc. v. Ohio Dept. of Transp. (June 28, 2001), Franklin App. No. 00AP-1119. In that case, which involved a temporary road surface to facilitate lane changes in a construction zone, the duty was satisfied by regular inspection of the work by the independent contractor, remedying defects discovered during the course of the inspections, reducing the speed limit, erecting warning signs and utilizing traffic control barrels. As articulated by this court in Rhodus v. Ohio Dept. of Transp. (1990), 67 Ohio App.3d 723, "the state is not an insurer of the safety of its highways. Its duty is to maintain its highways in a reasonably safe condition." Id. at 729-730; see, also, Hurier v. Ohio Dept. of Transp. (Sept. 3, 2002), Franklin App. No. 01AP-1362, 2002-Ohio-4499 at ¶ 22.
 {¶ 29} As noted above, mowing with a commercial mower pulled behind a tractor involves some risks, but those risks are minimized if the person doing the mowing keeps a careful eye out for movable objects which can be dislodged by the moving apparatus. ODOT transferred this responsibility to the contractor doing the mowing, since the person actually doing the mowing is in the best position to keep a lookout for objects which can be run over by the tractor and mower. Traffic on interstate highways is constantly discarding trash or dislodging objects already present. Someone policing the area ahead of the mower may miss the items which need to be picked up, if only because the movable object has not been discarded into the path of the mower yet.
 {¶ 30} The second assignment of error is overruled.
 {¶ 31} We do not believe that ODOT has to do all the grass cutting on interstate highways itself. The work involved is not the kind that cannot be accomplished without inherent risk of harm to others, nor is it a type that in the ordinary course of performing it harm would be expected. Rodic v. Koba (Dec. 7, 2000), Cuyahoga App. No. 77599. ODOT had no reason to believe that the work, if done properly, would cause injury to anyone. Id. at 4. ODOT can contract with independent contractors and should require independent contractors to carry sufficient insurance to cover whatever liability risks are involved. Stated in the words of the third assignment of error, we believe that the duty to cut grass on interstate highways is "delegable to [an] independent contractor" and that no liability arises from such delegation, including the obligation to look for movable objects before mowing an area.
 {¶ 32} The third assignment of error is overruled.
 {¶ 33} No other viable theory of recovery was presented to the trial court. Hence, we cannot say that the trial court erred in granting summary judgment for ODOT. Therefore, the first assignment of error must also be overruled.
 {¶ 34} All three assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, J., concurs.
LAZARUS, J., concurs in judgment only.
[1] Gore v. Ohio Dept. of Transp. (2002), 119 Ohio Misc.2d 138,2002-Ohio-4263.
[2] By contrast, in Jones v. St. Louis Housing Authority (1987),726 S.W.2d 766, where a young boy died of injuries sustained from being struck in the head by a 2" x 12" stick propelled from a riding lawnmower, the housing authority contracted with an independent contractor to mow the grounds of one of its residential properties, but did not expressly provide for the contractor to clear debris before commencing the mowing. The testimony showed: (1) the housing authority assured the contractor it would clear the area of debris; (2) the contractor would have charged $1,000 more on the contract had the duty to clear the 27-acre property been passed on to it; and the housing authority had five maintenance persons whose daily responsibilities included policing the area of the mowing, clearing debris and directing people in the area out of harm's way. Id. at 774, 778.